IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STEPHEN KERR EUGSTER, | ) | No. 34345-6-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE BAR | ) | PUBLISHED OPINION |
| ASSOCIATION, a legislatively created | ) | |
| Washington association (WSBA); and | ) | |
| PAULA LITTLEWOOD, Executive | ) | |
| Director, WSBA, in her official capacity; | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DOUGLAS J. ENDE, Director of the | ) | |
| WSBA Office of Disciplinary Counsel, in | ) | |
| his official capacity; FRANCESCA | ) | |
| D'ANGELO, Disciplinary Counsel, | ) | |
| WSBA Office of Disciplinary Counsel, in | ) | |
| her official capacity, | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, C.J. —

*Endless litigation leads to chaos. Schroeder v. 171.74 Acres of Land, More or Less*, 318 F.2d 311, 314 (8th Cir. 1963) (emphasis added).

Stephen Eugster initiated this suit, the sixth proceeding involving the Washington State Bar Association (WSBA) and himself. Eugster sues the WSBA, the entity that administers Washington State's lawyer disciplinary system on behalf of the state Supreme Court, and some of WSBA's officials. Eugster claims that the discipline system violates his due process and First Amendment rights to the United States Constitution and that the WSBA retaliated against him for an earlier lawsuit. WSBA and its officials moved to dismiss the suit on five grounds: lack of subject matter jurisdiction, res judicata, failure to state a claim, immunity, and lack of justiciability. The trial court granted the motion on all grounds. On appeal, we hold that the trial court possessed subject matter jurisdiction, but that res judicata bars this lawsuit because Eugster could have asserted his due process arguments in at least one earlier proceeding.

## FACTS

Since the trial court dismissed the complaint pursuant to a motion to dismiss, we borrow from Stephen Eugster's complaint to prepare this statement of facts. The WSBA, like most other state bar associations, functions as an integrated bar. All active lawyers in the state of Washington are members of and must pay dues to the WSBA. The WSBA, by direction of the Washington Supreme Court, administers the system to discipline lawyers who violate the attorney professional code of ethics. The Supreme Court reserves the final say in disciplining a member of the Washington State bar.

2

In 2005, the WSBA investigated a lawyer disciplinary grievance filed against Stephen Eugster by a former elderly client, Marion Stead. After Stead terminated Eugster's services, Eugster filed a guardianship petition against Stead without any investigation as to her alleged incompetency. Eugster sought to appoint Stead's son as the guardian despite Stead having directed Eugster to remove her son from control over her affairs. In the process, Eugster disclosed to the son and others confidential communications between Eugster and Stead. Eugster refused to surrender papers and property to Stead and refused to deliver Stead's file to her new counsel. The WSBA Disciplinary Board recommended disbarment. The Washington Supreme Court, in a 5-4 decision, reversed the disbarment and instead suspended Eugster from the practice of law for eighteen months. *In re Disciplinary Proceeding Against Eugster*, 166 Wn.2d 293, 209 P.3d 435 (2009). During the proceeding, Stephen Eugster never challenged the constitutionality of the WSBA attorney disciplinary system. Because of the many proceedings involving Stephen Eugster and the WSBA, we refer to the grievance filed by Marion Stead and the eventual Supreme Court decision as *Eugster* I.

During his eighteen-month suspension, the WSBA commenced *Eugster* II, an investigation of a grievance against Stephen Eugster filed by Mattie Kivett. In response to the second grievance, the WSBA eventually sent a letter to Eugster instructing him to analyze cases more thoroughly and concurrently dismissed the grievance. The WSBA

3

gave notice to Eugster that he must avoid the grieved conduct and the WSBA would retain file documents concerning the complaint for five years.

On January 21, 2010, Stephen Eugster filed *Eugster* III, in the United States District Court for the Eastern District of Washington, a complaint under 42 U.S.C. § 1983 alleging that Washington's attorney discipline system violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. *Eugster v. Washington State Bar Association*, No. CV 09-357-SMM, 2010 WL 2926237 (E.D. Wash. July 23, 2010), *aff'd*, 474 Fed. App'x 624 (9th Cir. 2012). He named, as defendants, members of the Washington State Supreme Court, the WSBA, and members of the WSBA Board of Governors. Eugster requested that the court enjoin the defendants from continuing to operate Washington's attorney discipline system. He initially further requested that the court declare void the suspension imposed on him in *Eugster* I, but he withdrew the request before the defendants filed a motion to dismiss. The United States District Court dismissed *Eugster* III, without prejudice, for lack of standing because Eugster failed to demonstrate that he suffered an actual or imminent injury in fact since he provided no evidence of any pending disciplinary proceeding against him.

Stephen Eugster appealed *Eugster* III to the United States Ninth Circuit Court of Appeals. In an opinion shorter than our opinion, the federal appeals court affirmed the dismissal since Eugster did not allege he would ever again be subject to disciplinary

proceedings. *Eugster v. Washington State Bar Association*, 474 Fed. App'x 624 (9th Cir. 2012).

On September 23, 2014, Cheryl Rampley filed *Eugster* IV, a lawyer disciplinary grievance with the WSBA against Stephen Eugster, the third grievance against Eugster. Rampley is the niece-in-law of Verdelle G. O'Neill, a client of Eugster. The WSBA sent notice of the grievance to Eugster on October 1, 2014. In response, Eugster sent voluminous records to the WSBA concerning his representation of O'Neill. He also wrote letters to respond to Rampley's allegations. On November 21, 2014, Kevin Bank, WSBA managing disciplinary counsel, relayed a letter to Eugster to inform him that the WSBA assigned Bank to complete the investigation. Eugster responded to further letters from Bank. A Christmas day 2014 letter from Eugster asked Bank to identify for Eugster his deficiencies so that Eugster could correct the wrongs.

On March 12, 2015, Stephen Eugster filed *Eugster* V, *Eugster v. Washington State Bar Association*, No. C15-0375-JLR, 2015 WL 5175722 (W.D. Wash. Sept. 3, 2015), *aff'd*, ___ F. App'x ___ (9th Cir. 2017), in the United States District Court for the Western District of Washington. He joined as defendants in the suit WSBA officials and all justices of the Washington Supreme Court. In the federal suit, Eugster challenged the constitutionality, under the First and Fourteenth Amendments to the United States Constitution, of compulsory membership in and payment of dues to Washington's

integrated bar association. Eugster asked for judicial declarations permitting him to practice law without membership in the WSBA, freeing him from mandatory bar dues, and declaring the WSBA unconstitutional.

In our case on appeal, Stephen Eugster alleges that, despite being notified of the grievance filed by Cheryl Rampley in October 2014, the WSBA did not decide to commence an investigation based on the grievance until after his filing of *Eugster* V, his second federal lawsuit. According to Eugster, WSBA disciplinary counsel Vanessa Norman informed him of the investigation shortly after he filed the federal lawsuit. On April 3, 2015, Norman informed Eugster that the WSBA assigned her to conduct the investigation on Rampley's grievance. Then on April 21, 2015, defendant Francesca D'Angelo wrote to Eugster to inform him that the WSBA assigned her to investigate the grievance. Thereafter, Eugster responded to more requests for information from the WSBA. Verdelle G. O'Neill died on August 18, 2015.

On September 3, 2015, the United States District Court for the Western District of Washington entered an order dismissing *Eugster* V. The court ruled that Stephen Eugster failed to state a claim under which he could receive relief because federal courts uphold the constitutionality of compulsory membership in and dues to bar associations. He also failed to state a claim on which he could receive relief with regard to the expenditure of funds by the WSBA, since the bar association allowed a *Keller* deduction. The district

court dismissed the latter claim without prejudice to allow Eugster to amend the complaint to specifically allege misallocation of charges not permitted to be compulsory assessed. The court gave ten days for the amendment or else the court would also dismiss the claim with prejudice. The entire complaint against the WSBA was dismissed on the ground of Eleventh Amendment immunity, since a bar association is an arm of the state. *Eugster v. Washington State Bar Association*, No. C15-0375-JLR, 2015 WL 5175722 (W.D. Wash. Sept. 3, 2015). We suspect that Eugster did not amend the complaint. He filed an appeal with the Ninth Circuit Court of Appeals on September 21, 2015. The Ninth Circuit has yet to issue a decision in *Eugster* V.

In his complaint on appeal, Stephen Eugster alleges that the WSBA, on November 3, 2015, sent him a letter informing him that disciplinary counsel intended to request a Disciplinary Board review committee to order review of Cheryl Rampley's complaint by a hearing officer. According to Eugster, the WSBA letter contained false statements concerning his conduct and failed to inform the Disciplinary Board of conflicting material statements. When Stephen Eugster filed this appeal, the WSBA had yet to commence formal disciplinary action against Eugster as a result of Cheryl Rampley's grievance.

No. 34345-6-III
*Eugster v. WSBA*

PROCEDURE

On November 9, 2015, Stephen Eugster initiated this lawsuit, *Eugster* VI, in state superior court, against the WSBA and three WSBA officials, Executive Director Paula Littlewood, Director of Office of Disciplinary Counsel Douglas Ende, and disciplinary counsel Francesca D'Angelo. Eugster alleges that the superior court has jurisdiction of *Eugster* VI under 42 U.S.C. § 1983, Washington Constitution article IV, section 6, RCW 2.08.010, and chapter 7.24 RCW. The WSBA and its officials raise the same defenses and arguments. Therefore, we will collectively refer to the defendants as the WSBA. Because of the extensive and complicated claims and requests for relief asserted by Stephen Eugster, we supply many details of Eugster's causes of action and demands for relief.

Stephen Eugster's superior court complaint thoroughly outlines the structure and function of the WSBA and its disciplinary process. Eugster contends that the organizational structure creates inherent conflicts. According to Eugster, the WSBA's duties include advocating for him, yet it seeks to discipline him. Supreme Court members help to choose WSBA officials, and WSBA officials provide recommendations for appointments to the Supreme Court. WSBA officials vet disciplinary hearing officers and members of the WSBA Disciplinary Board, and then the hearing officers and Disciplinary Board review disciplinary grievances filed by the WSBA. Eugster

8

complains that the WSBA principally handles grievances lodged against sole practitioners or members of small law firms. Hearing officers vary significantly in competence and some officers violate the rights of the accused lawyers. The Washington Rules of Professional Conduct (RPC) violate procedural due process because in many instances the rules do not define what is permitted and not permitted. The Supreme Court unlawfully defers to decisions of the Disciplinary Board. In his complaint, Stephen Eugster alleges that the conduct of the Disciplinary Board lacks impartiality. He complains that the WSBA vets all members of the board before each member's appointment.

In the complaint in *Eugster* VI, Stephen Eugster alleges deprivation of his civil rights, intentional infliction of emotional distress, and negligence. Eugster identifies the civil rights violations as deprivation of procedural due process, both state and federal. He also claims that the WSBA unconstitutionally employed the discipline system to retaliate against him for bringing a federal lawsuit against it, and, thus, the WSBA violates his federal First Amendment rights. Finally, Eugster contends that the disciplinary system denies him of his right to petition the government for redress of violations of his state and United States constitutional rights. Eugster seeks a declaration that the WSBA disciplinary system is unconstitutional, an injunction against the WSBA disciplining him, damages, punitive damages, and reasonable attorney fees and costs.

9

On December 23, 2015, Stephen Eugster filed a motion for voluntary dismissal of his complaint pursuant to CR 41(a)(1)(B). Presumably, the trial court never addressed the motion.

On January 22, 2016, the WSBA filed a motion, pursuant to CR 12(b), to dismiss Stephen Eugster's complaint. In the motion, WSBA argued that the superior court lacked jurisdiction, Eugster's claims are not justiciable because he lacks standing and the claims are not ripe, Eugster failed to state a claim on which relief can be granted, res judicata bars the claims, and the WSBA enjoys immunity.

On February 3, 2016, Stephen Eugster filed an amended complaint for declaratory judgment, injunction, and damages. The amended complaint repeated the description of Washington State's integrated bar association and the alleged constitutional defects of the structure and processes of the bar and its disciplinary system. The amendment removed Eugster's intentional infliction of emotional distress claim, but reserved his negligence claim. A section of the amended complaint reads:

> This action seeks damages from Defendants for *negligence* as a result of Defendants['] use of the Washington Lawyer Discipline System as applied to Plaintiff as retaliation against Plaintiff for bringing an action in Federal Court to asserting that Plaintiff's compelled membership and that such actions violates Eugster's right of petition of the government for a redress of grievances under the First and Fourteenth Amendment Rights to the United States Constitution, and Washington State Constitution Art. 1, Section 4.

10

No. 34345-6-III
*Eugster v. WSBA*

CP at 86-87 (emphasis added). The word "negligence" fits awkwardly in this paragraph, and we question if Stephen Eugster meant to allege a claim under common law negligence.

The gist of the amended complaint lies in its introduction:

> This case concerns the civil rights of Plaintiff protected by 42 U.S.C. § 1983, the First and Fifth Amendments to the United States Constitution, and Washington State Constitution Art. I, Section 1 and Section 2. Plaintiff seeks declaratory judgments by the court declaring the WSBA Washington Lawyer Discipline System unconstitutional because (1) the Discipline System does not pass strict scrutiny and because (2) the Discipline System violates a lawyer's right to due process of law.
> Eugster seeks an injunction enjoining the Defendants or some of them, from application of the WSBA Washington Lawyer Discipline System to him, and in furtherance of the court's determinations that the Discipline System is unconstitutional.
> As to the foregoing, Eugster does not seek damages, or monetary relief from Defendants or any of them.
> However, Plaintiff does seek damages from some or all of the Defendants for compensatory or nominal damages under 42 U.S.C. § 1983 for injuries to Plaintiff as a result of violations of Plaintiff's rights by Defendants or some of them under 42 U.S.C. § 1983 concerning the use by Defendants or some of them of the Discipline System to intimidate, harass and retaliate against Plaintiff for bringing an action in United States District Court, Western District of Washington in which Plaintiff asserts that under First and Fourteenth Amendments and 42 U.S.C. § 1983 his fundamental right not to associate with the WSBA is violated.

CP at 85. The amended complaint's prayer seeks the same relief as sought in the first complaint.

The trial court dismissed all claims of Stephen Eugster with prejudice. The court

11

dismissed all claims for damages based on GR 12.3's grant of immunity to the WSBA and its employees. The court dismissed all constitutional claims and claims for declaratory judgment for lack of subject matter jurisdiction. The court ruled that the Washington Supreme Court, under Rules for Enforcement of Lawyer Conduct (ELC) 2.1, possessed exclusive jurisdiction over the lawyer discipline system. The trial court reasoned that Eugster could have litigated his constitutional arguments before the state Supreme Court during his earlier discipline proceeding. Stephen Eugster appeals.

On September 23, 2016, after filing his opening and reply brief in this appeal, Stephen Eugster filed a statement of additional authorities. This court rejected the filing because of the statement's noncompliance with RAP 10.8. The additional authorities constituted copies of pleadings from the WSBA Office of Disciplinary Counsel's complaint against Eugster in *Eugster* IV for his conduct with regard to Verdelle O'Neill, including a formal complaint filed on June 16, 2016, after Eugster commenced this suit. RAP 10.8 serves to allow parties an opportunity to cite case authority decided after the completion of briefing. *O'Neill v. City of Shoreline*, 183 Wn. App. 15, 23, 332 P.3d 1099 (2014). The rule does not grant permission to file additional documents.

This court scheduled the decisional conference of the reviewing panel for December 6, 2016. On December 14, 2016, Stephen Eugster filed a motion requesting that this court take judicial notice of documents, and he attached the same documents to

his motion that he sought to bring to this court's attention by his statement of additional authorities. The documents include the WSBA's June 16, 2016 formal complaint in *Eugster* IV concerning Eugster's conduct toward Verdelle O'Neill; Eugster's answer, affirmative defenses, counterclaims and third-party claims; the WSBA's motion to strike Eugster's counterclaims and third-party complaint; Eugster's response to the WSBA's motion to strike; order on motion to strike; and discovery pleadings. In the order on motion to strike, the WSBA hearing examiner dismissed affirmative defenses, counterclaims, and third-party claims asserted by Eugster on the basis of alleged due process rights deprivations.

On January 9, 2017, Stephen Eugster filed with this court a second motion requesting that this court take judicial notice. Eugster's motion contends that the WSBA ended and a new association was born during the WSBA Board of Governors meeting, on September 29-30, 2016, when the board added limited practice officers and limited license legal technicians as members to the association. We address Eugster's motions seeking judicial notice at the conclusion of our opinion.

## LAW AND ANALYSIS

We initially note uncertainty as to whether we examine Stephen Eugster's first complaint or his amended complaint. The trial court did not enter any order explicitly dismissing the original complaint or granting Eugster leave to file an amended complaint.

The court's dismissal order expressly dismisses the "complaint," not the amended complaint, but the order also references review of the amended complaint, not the first complaint. We need not resolve this uncertainty since the result remains the same under either complaint.

Before addressing issues such as subject matter jurisdiction and res judicata, we identify the substantive claims asserted by Stephen Eugster. With his amended complaint, Eugster seeks damages, an injunction, and declaratory relief under the Washington Constitution and the federal statute, 42 U.S.C. § 1983. He may seek damages for negligence. On appeal, Eugster only assigns error to rulings with regard to his civil rights claims under the state and federal constitutions. Therefore, we do not address any claim for negligence. We temporarily focus on 42 U.S.C. § 1983.

42 U.S.C. § 1983, an often employed, but rarely quoted, statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 is not itself a source of substantive rights. *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Section 1983 only fulfills the procedural or remedial role of authorizing the assertion of a claim for relief. *Graham v.*

14

*Connor*, 490 U.S. at 393-94. The pleader must also allege an independent substantive basis for his claim, whether grounded in a federal constitutional or a statutory right. *Nabozny v. NCS Pearson, Inc.*, 270 F. Supp. 2d 1201, 1205 (D. Nev. 2003).

In his complaint, Stephen Eugster claims the WSBA violated his right to file a grievance and his right to free speech under the First Amendment to the United States Constitution. Nevertheless, he forwards no argument on behalf of the First Amendment in his appellate brief, so we deem this cause of action abandoned. This court does not review issues not argued, briefed, or supported with citation to authority. RAP 10.3(a); *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968); *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012). Eugster asserts in his amended complaint and argues on appeal that the WSBA breached the due process clause found in the Fourteenth Amendment to the United States Constitution. We focus on this claim.

Subject Matter Jurisdiction

We are compelled to first decide if the trial court, and, in turn, this reviewing court, holds subject matter jurisdiction over Stephen Eugster's complaint. We lack authority to address the other defenses of the WSBA if we lack subject matter jurisdiction. A court must have subject matter jurisdiction in order to decide a case. *In re T.R.P.*, 360 N.C. 588, 636 S.E.2d 787, 790 (2006); *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 443 (Tex. 1993). Subject matter jurisdiction

15

is the indispensable foundation on which valid judicial decisions rest, and, in its absence, a court has no power to act. *State v. Sellers*, ___ N.C. App. ___, 789 S.E.2d 459, 465 (2016). Nevertheless, a court always has jurisdiction to determine whether it has jurisdiction over a particular case. *Schwartz v. State*, 136 Haw. 258, 262-63, 361 P.3d 1161 (2015).

Stephen Eugster argues that the superior court has subject matter jurisdiction over his claims because a superior court possesses general jurisdiction and no constitutional provision or statute has exclusively vested jurisdiction elsewhere. The WSBA responds that article IV, section 1 of the Washington Constitution and state rule ELC 2.1 vest exclusive jurisdiction in the Washington Supreme Court for challenges to the lawyer disciplinary system.

A court possesses subject matter jurisdiction when it holds authority to adjudicate the type of controversy involved in the action. *In re Marriage of McDermott*, 175 Wn. App. 467, 480-81, 307 P.3d 717 (2013). Stephen Eugster bears the burden of proving the court has jurisdiction. *Outsource Services Management, LLC v. Nooksack Business Corp.*, 172 Wn. App. 799, 807, 292 P.3d 147 (2013), *aff'd*, 181 Wn.2d 272, 333 P.3d 380 (2014).

Since Stephen Eugster limited his suit to civil rights claims under 42 U.S.C. § 1983, we limit our review to determining if a state court of general jurisdiction holds

16

subject matter jurisdiction over a § 1983 claim. We specifically review the issue of whether the Washington superior court holds subject matter jurisdiction to entertain due process challenges to the structure of, process of, and actions by the WSBA from an attorney previously subjected to the grievance process or presently scrutinized by the lawyer discipline process. This review demands distinguishing between challenging a ruling by the WSBA or Supreme Court, challenging a pending proceeding, and forwarding a general, as opposed to an applied, challenge to the attorney disciplinary rules.

The trial court's ruling failed to observe Stephen Eugster's complaint and amended complaint included claims under 42 U.S.C. § 1983. In other words, the complaint asserted claims under federal law, which enjoys supremacy over state law. U. S. CONS. art. VI, cl. 2. A state rule such as ELC 2.1, which vests exclusive jurisdiction in the Washington Supreme Court for challenges to the lawyer disciplinary system, does not necessarily survive federal law dictates.

Under the Washington Constitution:

> The judicial power of the state shall be vested in the supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide.

WASH. CONST. art. IV, § 1. ELC 2.1, a section of the rules for enforcement of lawyer conduct, declares:

17

> The Washington Supreme Court has exclusive responsibility in the state to administer the lawyer discipline and disability system and has inherent power to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline and disability. Persons carrying out the functions set forth in these rules act under the Supreme Court's authority.

Under these provisions, the power of the Washington Supreme Court, under state law, to regulate the practice of law is inviolate. *Kommavongsa v. Haskell*, 149 Wn.2d 288, 311, 67 P.3d 1068 (2003). The state Supreme Court holds the ultimate authority for attorney discipline in Washington. *In re Disciplinary Proceedings Against Blanchard*, 158 Wn.2d 317, 328, 144 P.3d 286 (2006). The court exercises plenary authority in attorney discipline matters. *In re Disciplinary Proceedings Against VanDerbeek*, 153 Wn.2d 64, 80, 101 P.3d 88 (2004). In turn, by state Supreme Court rule, the Washington high court has delegated to the WSBA disciplinary counsel and Disciplinary Board duties with regard to investigation and review of disciplinary grievances. ELC 2.3, 2.8. The Supreme Court has delegated no duties to the superior courts. *Hahn v. Boeing Co.*, 95 Wn.2d 28, 34, 621 P.2d 1263 (1980).

The Washington Constitution also addresses the jurisdiction of our superior courts, found in each county. WASH. CONST. art. IV, § 6 proclaims:

> The superior court shall . . . have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court.

Based on the state constitution, superior courts maintain general jurisdiction. *Bour v. Johnson*, 80 Wn. App. 643, 647, 910 P.2d 548 (1996). Exceptions to the superior court's broad jurisdictional grant must be narrowly construed. *In re Marriage of McDermott*, 175 Wn. App. at 481 (2013). Stephen Eugster seeks declaratory relief. Pursuant to RCW 7.24.010, a portion of the declaratory judgment chapter, superior courts "have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." As previously mentioned, Eugster also sues for federal civil rights violations under 42 U.S.C. § 1983. State courts have concurrent jurisdiction with federal courts in actions brought under 42 U.S.C. § 1983. *Haywood v. Drown*, 556 U.S. 729, 731, 129 S. Ct. 2108, 173 L. Ed. 2d 920 (2009); *Robinson v. City of Seattle*, 119 Wn.2d 34, 57, 830 P.2d 318 (1992).

If Stephen Eugster limited his challenge to Washington law or to the previous implementation of attorney discipline against him, we would hold that the superior court lacked subject matter jurisdiction over Eugster's complaint. But since he asserts federal law and does not simply challenge past orders against him, we hold to the contrary. Two United States Supreme Court decisions, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983) and *Haywood v. Drown*, 556 U.S. 729, compel our conclusion that the superior court and, in turn, this reviewing court possess subject matter jurisdiction.

19

In those states where the Supreme Court possesses exclusive jurisdiction over attorney discipline and the court appoints a Disciplinary Board as its agent, decisions of the board to discipline an accused attorney function as a state court judgment. *Mosby v. Ligon*, 418 F.3d 927, 932 (8th Cir. 2005); *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 607-08 (9th Cir. 2005). As already outlined, Washington operates such a disciplinary system. Therefore, when a bar disciplinary arm of a state Supreme Court issues an order against an attorney, a federal district or state trial court may not sit in review of the order even if the attorney challenges the order on federal constitutional grounds. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Anderson v. Charter Township of Ypsilanti*, 266 F.3d 487, 492-93 (6th Cir. 2001). Nevertheless, a party may bring a general challenge in lower courts to state bar rules promulgated by state courts in nonjudicial proceedings. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. at 486; *Schneider v. Colegio de Abogados de Puerto Rico*, 917 F.2d 620, 628 (1st Cir. 1990).

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) informs our decision. *Feldman* was actually two lawsuits, each started by attorneys seeking admission to the District of Columbia bar. By act of congress, the District of Columbia Court of Appeals held the authority to make rules respecting the admission and discipline of District of Columbia attorneys. The Court of Appeals, being the highest court with

20

respect to District of Columbia local law, serves the function of a state Supreme Court. Marc Feldman, despite never attending law school, sought admission to the District of Columbia bar on the basis that he studied law in the office of a practicing attorney and had gained entrance to the Maryland and Virginia bars after having passed each state's bar examination. The District of Columbia Court of Appeals issued an order denying Feldman's application for admission based on a Court of Appeals rule requiring applicants to have graduated from an American Bar Association (ABA) accredited law school. Edward Hickey attended an unaccredited law school after serving in the Navy with distinction for twenty years. The District of Columbia Court of Appeals entered an order denying Hickey's application for entrance into the District of Columbia bar on the basis of a rule requiring an applicant to have graduated from an ABA accredited law school. Evidence, however, showed that the Court of Appeals had waived this rule in the past.

Marc Feldman sued the District of Columbia Court of Appeals in the United States District Court for the District of Columbia. He alleged that the Court of Appeals, by denying him admission, deprived him of liberty and property without due process of law. He further alleged that the Court of Appeals arbitrarily discriminated against him in violation of equal protection of the laws. He sought a declaration that the Court of Appeals and its rule, either on its face or as applied to him, violated his federal

21

constitutional rights. Edward Hickey also sued the District of Columbia Court of Appeals in the United States District Court. The allegations of and relief sought by Hickey echoed the allegations and prayer for relief of Marc Feldman.

The United States District Court dismissed both Marc Feldman's and Edward Hickey's suits on the basis that it lacked subject matter jurisdiction since only the United States Supreme Court, within the federal judiciary, may entertain an appeal from a state court judicial order. The United States Court of Appeals for the District of Columbia Circuit, a federal court as opposed to the Court of Appeals for the District of Columbia, reversed and remanded the cases to the district court for review on their merits. The United States Court of Appeals ruled that the proceedings before the District of Columbia Court of Appeals were not judicial in the federal sense and thus did not foreclose litigation of the constitutional claims in the lower federal court.

In *District of Columbia Court of Appeals v. Feldman*, the United States Supreme Court affirmed in part and reversed in part. The Court ruled that, to the extent Hickey and Feldman sought review in the federal district court of the District of Columbia Court of Appeals' denial of their petitions, the federal lower court lacked subject matter jurisdiction over the complaints. 28 U.S.C. § 1257. To challenge those denials, even on constitutional grounds, before the federal courts, Hickey and Feldman should have sought certiorari from the United States Supreme Court after issuance of the District of

22

Columbia Court of Appeals' respective orders. But there was more to the Supreme Court decision. To the extent Hickey and Feldman mounted a general challenge to the constitutionality of the rule requiring graduation from an accredited law school, the United States District Court held subject matter jurisdiction over the complaints.

In *District of Columbia Court of Appeals v. Feldman*, the United States Supreme Court undertook a nuanced analysis, and the outcome was not all or nothing. The Court considered the key question to be whether the District of Columbia Court of Appeals' orders denying Marc Feldman's and Edward Hickey's respective requests for applications to the bar were judicial in nature or legislative, administrative, or ministerial in nature. The proceedings surrounding the denial of the waivers by the local Court of Appeals were judicial in nature since the orders did not look to the future or change existing conditions, but instead applied present facts to a previously existing rule. In contrast, when issuing its general rules controlling the admission and discipline of attorneys, the District of Columbia Court of Appeals acted in a legislative manner. Therefore, challenges to the constitutionality of state bar rules did not necessarily ask the lower court to review a final state court judgment in a judicial proceeding. The Supreme Court qualified its ruling by noting it did not reach the question of whether the doctrine of res judicata foreclosed any portions of the litigation.

We may ponder the practical effect of the United States Supreme Court's rulings

23

in *District of Columbia Court of Appeals v. Feldman*. Assume that, on remand, the United States District Court agreed with Marc Feldman and Edward Hickey and in general held unconstitutional the District of Columbia rule requiring graduation from an accredited law school. Would Feldman and Hickey automatically be entitled to admission to the D.C. bar, despite being unable to challenge their prior denial to admission? Must Feldman and Hickey undergo the application process again? Could the District of Columbia Court of Appeals deny the application the second time on the basis that the first denial remained binding? The United States Supreme Court decision might indirectly allow Feldman and Hickey the goal directly unobtainable.

*Feldman* of course has the distinction of initially being filed in federal, not state court. We conclude, however, that its rules apply equally to state court litigation, since state courts hold concurrent jurisdiction with federal courts over claims under the federal constitution and 42 U.S.C. § 1983. *Haywood v. Drown*, 556 U.S. 729 (2009) discussed later confirms this conclusion.

*Feldman* also fails to address the outcome if a state bar has commenced disciplinary proceedings against an attorney, but neither the Disciplinary Board nor the state Supreme Court has issued a formal order of discipline. When the lawyer sues in federal court, the federal court will abstain and stay the court action under the doctrine formulated in *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

24

*Leaf v. Supreme Court*, 979 F.2d 589 (7th Cir. 1992). A state superior court has no such obligation to abstain.

Stephen Eugster alleged in both complaints that WSBA's disciplinary counsel asked the Disciplinary Board to refer Cheryl Rampley's grievance for formal process. Nevertheless, he did not allege that the Disciplinary Board made the referral. At the time Eugster filed suit, no formal proceedings pended against Eugster. Regardless, the WSBA does not contend that, because of any pending proceeding against Stephen Eugster within the state bar disciplinary system, the courts should as a matter of comity or restraint defer to the disciplinary process even if jurisdiction exists.

*Haywood v. Drown*, 556 U.S. 729 (2009) also controls our review of subject matter jurisdiction. In order to stem increasing civil rights litigation filed by state prisoners against prison officials, the New York Legislature adopted legislation divesting state supreme courts of jurisdiction over § 1983 suits seeking money damages against correction officers. New York supreme courts are the state's trial courts of general jurisdiction. The United States Supreme Court held the New York legislation unconstitutional because the exceptional treatment of a limited category of § 1983 claims was inconsistent with the supremacy clause of the United States Constitution. Although States retain substantial leeway to establish the contours of their judicial systems, they lack authority to nullify a federal right or cause of action deemed inconsistent with their

25

local policies. The state of New York impermissibly thwarted Congress' judgment that all persons who violate federal rights under color of state law be held liable for damages. A state may not employ a jurisdictional rule to undermine federal law.

We must parse the allegations and requests for relief sought by Stephen Eugster. In both of his complaints, Eugster complains about compulsory membership in and dues payment to the WSBA. Nevertheless, his prayer for relief seeks no declaration or injunction with regard to membership or dues payment. His prayer for relief seeks only a declaration that the structure and process of the state bar disciplinary system violates due process and equal protection, and he abandoned his equal protection claim on appeal. He seeks an injunction against the WSBA from disciplinary proceedings against him. These requests do not challenge any earlier disciplinary order entered against Eugster. Instead, he seeks a ruling based on the general rules adopted by the Supreme Court concerning the organization and function of the WSBA disciplinary system. Therefore, we hold that the superior court possessed subject matter jurisdiction over Eugster's complaint or amended complaint.

The WSBA cites three out-of-state cases to support its contention that the superior court lacks subject matter jurisdiction: *Smith v. Mullarkey*, 121 P.3d 890 (Colo. 2005), *Barnard v. Sutliff*, 846 P.2d 1229 (Utah 1992), *Jacobs v. State Bar of California*, 20 Cal. 3d 191, 570 P.2d 1230, 141 Cal. Rptr. 812 (1977). All cases support the WSBA's

26

position that superior courts lack jurisdiction to review state bar disciplinary proceedings. Nevertheless, as state court decisions, the trio of opinions lack value in the face of United States Supreme Court decisions addressing federal law.

In *Jacobs v. State Bar*, the California state bar, and, in *Smith v. Mullarkey*, the Colorado state bar, had already initiated disciplinary proceedings against the attorney when he filed suit in the trial court for relief. In *Barnard v. Sutliff*, the attorney challenged, in the state trial court, the state bar's disciplinary procedure on due process grounds, although the opinion does not mention if the attorney relied on the state constitution, federal constitution, or both. The Utah high court ruled that the attorney could not challenge the bar's procedures in the lower court, since the high court maintained exclusive jurisdiction over the disciplinary process. The *Sutliff, Jacobs*, and *Smith* courts, however, did not address the federal law's requirement that state courts of general jurisdiction remain open for civil rights suit.

The WSBA notes that an attorney may raise and adjudicate constitutional challenges within the scope of the lawyer discipline system with ultimate and independent review by the state Supreme Court. *In re Disciplinary Proceeding Against Smith*, 170 Wn.2d 721, 729, 246 P.3d 1224 (2011); *see In re Disciplinary Proceeding Against Blanchard*, 158 Wn.2d at 330-31 (2006). We recognize this feature of the disciplinary process, but the feature does not wrest jurisdiction from the superior court

27

over federal civil rights claims. Marc Feldman and Edward Hickey also argued constitutional claims before the District of Columbia Court of Appeals.

In his amended complaint, Stephen Eugster forwards the state constitution, in addition to the United States Constitution, as a basis for relief. He inconsistently mentions and omits Washington's Constitution in various sections of his appeal brief. On appeal, he assigns no error to dismissal of his state law claims. Assuming Eugster to still assert a claim under the Washington Constitution, we hold, based on Washington Constitution art. IV, § 1 and ELC 2.1, that the superior court and this reviewing court lack subject matter jurisdiction to address any claim based on the state constitution. 42 U.S.C. § 1983 extends only to claims based on the United States Constitution and federal statute. *Maine v. Thiboutot*, 448 U.S. 1, 4-8, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980).

When a party raises a constitutional claim under both the Washington and United States Constitutions, the Washington courts require the party to discuss the *Gunwall* factors if the party deems the Washington Constitution grants greater protections than the federal constitution. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986); *State v. Johnson*, 128 Wn.2d 431, 444-45, 909 P.2d 293 (1996); *State v. Olivas*, 122 Wn.2d 73, 82, 856 P.2d 1076 (1993). Stephen Eugster failed to discuss the *Gunwall* factors in his brief. Nevertheless, we lack authority to dismiss any state claim on this basis, since we lack subject matter jurisdiction to hear the merits of a claim under Washington law.

28

Res Judicata

The WSBA argues that Stephen Eugster's due process claim in this lawsuit substantively relates to Eugster's prior disciplinary proceedings culminating in *Eugster* I, 166 Wn.2d 293 (2009), and the suit Eugster brought against the WSBA and its officers in the United States District Court for the Western District of Washington, *Eugster* V, No. C15-0375-JLR, 2015 WL 5175722. The WSBA does not rely on *Eugster* III, the suit brought in the United States District Court for the Eastern District of Washington, presumably because the district court dismissed that action without prejudice. The WSBA argues that, because of the relationship between this suit on appeal and *Eugster* I or V, res judicata bars this suit. Since we hold that the res judicata effects of *Eugster* I compel dismissal of *Eugster* VI, this case on appeal, we do not address the import of *Eugster* V.

In *Eugster* I, the Washington Supreme Court, through its disciplinary arm, the WSBA, and by its own reported decision, imposed disciplinary sanctions on Stephen Eugster. During *Eugster* I, the WSBA and the Supreme Court implemented the process that Eugster now complains violates his due process rights. Nevertheless, the Washington Supreme Court decision, 166 Wn.2d 293, mentions no argument by Eugster that the disciplinary proceeding breached his constitutional entitlements. The WSBA presents none of the records of the disciplinary process to show that, at any time during

29

the proceeding, Eugster raised a constitutional defense or sought to thwart the

disciplinary process on due process grounds. Nonetheless, the WSBA disciplinary rules

did not prevent any constitutional challenges during Eugster's disciplinary process. The

Washington Supreme Court has entertained constitutional challenges, within disciplinary

hearings, to the state disciplinary process as a whole and to discrete practices within the

process. *In re Disciplinary Proceeding Against Pfefer*, 182 Wn.2d 716, 344 P.3d 1200

(2015); *In re Disciplinary Proceeding Against Jackson*, 180 Wn.2d 201, 322 P.3d 795

(2014); *In re Disciplinary Proceeding against Starczewski*, 177 Wn.2d 771, 306 P.3d 905

(2013); *In re Disciplinary Proceeding Against Smith*, 170 Wn.2d 721, 246 P.3d 1224

(2011); *In re Disciplinary Proceeding Against King*, 168 Wn.2d 888, 232 P.3d 1095

(2010); *In re Disciplinary Proceeding Against Sanai*, 167 Wn.2d 740, 225 P.3d 203

(2009); *In re Disciplinary Proceeding Against Marshall*, 167 Wn.2d 51, 217 P.3d 291

(2009); *In re Disciplinary Proceeding Against Poole*, 164 Wn.2d 710, 193 P.3d 1064

(2008); *In re Disciplinary Proceeding Against Blanchard*, 158 Wn.2d 317, 144 P.3d 286

(2006); *In re Disability Proceeding Against Diamondstone*, 153 Wn.2d 430, 105 P.3d 1

(2005); *In re Disciplinary Proceeding Against Romero*, 152 Wn.2d 124, 94 P.3d 939

(2004); *In re Disciplinary Proceedings Against Miller*, 99 Wn.2d 695, 663 P.2d 1342

(1983); *In re Disciplinary Proceedings Against of Hawkins*, 91 Wn.2d 497, 589 P.2d 247

(1979); *In re Proceedings for Disbarment of Beakley*, 6 Wn.2d 410, 107 P.2d 1097

30

(1940); *In re Proceedings for Disbarment of Ward*, 106 Wash. 147, 179 P. 76 (1919); *In re Proceedings for Disbarment of Bruen*, 102 Wash. 472, 172 P. 1152 (1918).

Stephen Eugster does not contend that the WSBA has changed the disciplinary process since his suspension in 2009. Therefore, we ask if res judicata bars a lawsuit, in which an attorney challenges the constitutionality of the attorney disciplinary process, when the attorney could have, but did not, challenge the same process during any earlier disciplinary proceeding that resulted in a Supreme Court decision. We hold that res judicata stops the second suit.

Stephen Eugster asserts a federal claim in state court. Thus, we must decide whether we apply res judicata principles emanating from Washington law or federal law. Res judicata may bar constitutional claims brought under 42 U.S.C. § 1983. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 94 n.5, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980); *Preiser v. Rodriguez*, 411 U.S. 475, 497, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). 28 U.S.C. § 1738 requires all federal courts to give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so. Therefore, under federal law, state preclusion rules govern whether a plaintiff's § 1983 claim is barred by a state court judgment. *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 327 (4th Cir. 2005). Although this suit

31

landed in state court, additional reason would support application of the court's own home rules. We therefore apply Washington law of claims preclusion.

Under Washington law, res judicata, or claim preclusion, prohibits the relitigation of claims and issues that were litigated or could have been litigated in a prior action. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995); *Pederson v. Potter*, 103 Wn. App. 62, 67, 11 P.3d 833 (2000). The doctrine curtails multiplicity of actions and harassment in the courts. *Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 395, 429 P.2d 207 (1967).

The broad general rule of res judicata suggests that a party is always prohibited from litigating a claim or issue that could have been raised in any earlier suit. Nevertheless, limits constrain the doctrine. Under Washington law, for the doctrine of res judicata to apply, a prior judgment must have a concurrence of identity with a subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made. *Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983); *Berschauer Phillips Construction Co. v. Mutual of Enumclaw Insurance Co.*, 175 Wn. App. 222, 227-28, 308 P.3d 681 (2013). Res judicata also requires that the prior judgment be final. *Leija v. Materne Brothers, Inc.*, 34 Wn. App. 825, 827, 664 P.2d 527 (1983).

Washington law does not specify how precise the subject matter in the first and second suit must coincide. We observe, however, that the subject of both *Eugster* I and *Eugster* VI, the case on appeal, includes the WSBA disciplinary process. In his appeal brief, Stephen Eugster addresses the res judicata impact of *Eugster* V, but not *Eugster* I. Without an argument from Stephen Eugster to the contrary, we hold that the subject matter in the two proceedings matches.

The WSBA was not a named party in *Eugster* I. Nevertheless, the WSBA functioned as the plaintiff that prosecuted the ethical charges against Stephen Eugster. The rule of identity of parties does not demand that each party be a named party in both proceedings. The rule may benefit one in control of the litigation. *Stevens County v. Futurewise*, 146 Wn. App. 493, 504, 192 P.3d 1 (2008). Absent an argument from Stephen Eugster to the contrary, we hold that *Eugster* I and *Eugster* VI possess the same parties. Since Stephen Eugster and the WSBA litigate in their respective individual and official capacities in both procedures, we further hold that the quality of the parties corresponds in each suit.

Remember that WSBA is not the only defendant on appeal. In *Eugster* VI, Stephen Eugster also sues three employees of WSBA, Paula Littlewood, Francesca D'Angelo, and Douglas Ende. These employees, however, garner the same res judicata protections as their employer. Different defendants in separate suits are the same party

33

for res judicata purposes as long as they are in privity. *Ensley v. Pitcher*, 152 Wn. App. 891, 902-03, 222 P.3d 99 (2009). The employer and employee relationship suffices to establish privity. *Kuhlman v. Thomas*, 78 Wn. App. 115, 121-22, 897 P.2d 365 (1995).

The problematic res judicata factor for this appeal is the second factor of an identity of the cause of action. If we took this requirement literally, we would hold that the proceedings lack this identity. Washington law does not necessarily define the term "cause of action" for purposes of res judicata. In other contexts, the Washington courts have referred to a "cause of action" as the act that occasioned the injury, *McFarling v. Evaneski*, 141 Wn. App. 400, 405, 171 P.3d 497 (2007), and a legal right of the plaintiff invaded by the defendant. *Cowley v. Northern Pacific Railway Co.*, 68 Wash. 558, 563, 123 P. 998 (1912). *Black's Law Dictionary* defines the term as "a group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person; claim." BLACK'S LAW DICTIONARY 266 (10th ed. 2014). These definitions fit awkwardly into the relationship between *Eugster* I and *Eugster* VI. The operative facts of *Eugster* I was Stephen Eugster's conduct toward his client, Marion Stead. The WSBA initiated the proceeding in order to enforce the attorney's code of professional conduct, to protect the public, and to sanction Eugster. The operative facts that initiated *Eugster* VI was Cheryl Rampley's grievance filed with the WSBA against Eugster on behalf of her aunt, Verdelle G. O'Neill. Eugster,

34

not the WSBA, seeks a remedy in *Eugster* VI. *Eugster* I started as an administrative proceeding before an arm of the Supreme Court. *Eugster* VI is a civil rights action starting in superior court.

The res judicata doctrine either redefines or undefines the term "cause of action" as found in other settings. Washington utilizes no specific test for determining identity of causes of action. *Rains v. State*, 100 Wn.2d at 663-64 (1983). Consideration of four factors provide an analytical tool for determining whether two causes of action are identical for purposes of res judicata: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Berschauer Phillips Construction Co. v. Mutual of Enumclaw Insurance Co.*, 175 Wn. App. at 230 (2013). All four elements need not be present to bar the second legal action. *See Rains v. State*, 100 Wn.2d at 664.

In *Berschauer Phillips Construction Co. v. Mutual of Enumclaw Insurance Co.*, 175 Wn. App. 222 (2013), this court held that res judicata barred a second suit brought by the construction company against the insurance company. The central issue in both lawsuits were the same: whether the insurance company had a duty under its policy to indemnify its insured. The evidence necessary to each lawsuit was also the same.

35

The Washington Supreme Court's decision in *Eugster* I upheld the WSBA's and the Supreme Court's authority to discipline lawyers in general and Stephen Eugster in particular. The Supreme Court's opinion confirmed the validity of the Washington State attorney disciplinary process. Eugster's current challenge to that process would impair the express and implied rulings in *Eugster* I. The disciplinary process challenged by Eugster today remains the same from the process employed by the WSBA during *Eugster* I. Thus, Eugster asserts the same facts and arguments in *Eugster* VI that he could have raised in *Eugster* I. *Eugster* I and VI possess the same nucleus of facts relevant to the constitutionality of the Washington attorney disciplinary process. The same rights and disabilities were or are at stake in *Eugster* I and *Eugster* VI. Thus, we hold *Eugster* I and *Eugster* VI to involve the same cause of action.

Stephen Eugster's failure to assert a due process argument in *Eugster* I does not impede enforcement of res judicata. Res judicata applies to § 1983 actions with respect to the issues actually litigated and also issues that could have been but were not litigated in the state court proceedings. *Migra v. Warren City School District Board of Education*, 465 U.S. 75 (1984); *Berschauer Phillips Construction Co. v. Mutual of Enumclaw Insurance Co.*, 175 Wn. App. at 227-28 (2013). Res judicata applies not only to points on which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point that properly belonged to the subject of the litigation, and

36

which the parties, exercising reasonable diligence, might have brought forward at that time. *Sound Built Homes, Inc. v. Windermere Real Estate/South, Inc.*, 118 Wn. App. 617, 631 n.28, 72 P.3d 788 (2003).

Although many tests have been suggested for determining whether a matter should have been litigated in a prior proceeding, there is no simple or all-inclusive test. *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 330, 941 P.2d 1108 (1997). The controlling factors actually echo the factors reviewed when determining if the two suits entail the same cause of action. When determining if an argument should have been raised before, courts consider a variety of factors, including, whether the present and prior proceedings arise out of the same facts, whether they involve substantially the same evidence, and whether rights or interests established in the first proceeding would be destroyed or impaired by completing the second proceeding. *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. at 330. A matter should have been raised and decided earlier if it is merely an alternate theory of recovery or an alternate remedy. *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. at 331. A plaintiff may not reinstitute, against the same parties, the same cause of action based on the same array of facts merely by changing legal theories and sovereignties. *Howe v. Brouse*, 422 F.2d 347, 348 (8th Cir. 1970).

When a party should reasonably foresee that an adverse state court judgment will create a constitutional issue, that issue should be argued before the state court. *Roy v.*

*City of Augusta*, 712 F.2d 1517, 1521 (1st Cir. 1983). Otherwise the principles of res judicata will bar a party from later raising the constitutional claim against the same parties in an action under § 1983. *Roy v. City of Augusta*, 712 F.2d at 1521. The principle of res judicata that bars claims that might have been raised extends to a defendant in an earlier civil suit who failed to raise a defense based on the constitution. *Lovely v. Laliberte*, 498 F.2d 1261, 1263 (1st Cir. 1974). This principle even extends to defenses that a party could have raised in an administrative proceeding. *Krison v. Nehls*, 767 F.2d 344, 348 (7th Cir. 1985).

Although other jurisdictions' decisions do not bind us, federal courts have addressed the circumstances when a disciplined attorney sues the disciplinary authority for violation of constitutional rights after imposition of discipline. In *Martinez Rivera v. Trias Monge*, 587 F.2d 539 (1st Cir. 1978), the federal Court of Appeals held that res judicata barred an attorney's suit for violation of his constitutional rights against the Puerto Rico Supreme Court that suspended him from law practice. The attorney actually raised the constitutional claims during the disciplinary proceeding, but remember res judicata applies also to claims that a litigant could have asserted in the first proceeding. *Martinez Rivera v. Trias Monge* necessarily implies that a disciplinary proceeding can be the same cause of action as a later suit challenging the process employed during the proceeding.

38

*Leaf v. Supreme Court*, 979 F.2d 589 resulted in the same outcome. The Wisconsin Supreme Court's investigation of a complaint against an attorney resulted in a six-month suspension of the attorney's license to practice. The federal court dismissed the attorney's later civil rights action on the ground of res judicata, because the attorney sought to attack the state judicial decision in which she attempted to raise a constitutional challenge to the state disciplinary procedures. Wisconsin's disciplinary procedures echoed Washington's procedures.

In *Coogan v. Cincinnati Bar Association*, 431 F.2d 1209 (6th Cir. 1970), the Supreme Court of Ohio suspended James Coogan from the practice of law. Coogan filed suit in federal court to enjoin the suspension on the ground that the state disciplinary proceeding violated his constitutional right to confront witnesses. The federal court refused to entertain the suit for lack of subject matter jurisdiction and on the ground of res judicata. If Coogan disagreed with the Ohio Supreme Court's decision on constitutional grounds, Coogan could have asked the United States Supreme Court for review of the suspension.

Finally, in *Czura v. Supreme Court*, 632 F. Supp. 267 (D.S.C. 1986), *aff'd*, 813 F.2d 644 (4th Cir. 1987). Walter Czura filed suit to gain readmission to the South Carolina bar years after disbarment for committing a crime. The federal district court dismissed the suit because the attorney could have raised his constitutional challenge

39

before the state Supreme Court before disbarment.

In our case on appeal, Stephen Eugster does not challenge the discipline imposed on him during *Eugster* I. He seeks, in part, to preclude the prosecution of *Eugster* IV. Nevertheless, we discern no reason to distinguish our appeal from the other attorney disciplinary suits. Eugster could have raised his constitutional challenge in *Eugster* I. The policy against harassment by multiple suits applies with equal force when Eugster files an independent action to raise a defense to a second disciplinary proceeding that he could have raised in the first proceeding.

Stephen Eugster could not have recovered damages for constitutional infringements during the disciplinary process arrayed against him in *Eugster* I. Nevertheless, the same would have been true for the attorney plaintiffs in *Leaf v. Supreme Court*, 979 F.2d 589; *Martinez Rivera v. Trias Monge*, 587 F.2d 539; *Coogan v. Cincinnati Bar Association*, 431 F.2d 1209; *Czura v. Supreme Court*, 632 F. Supp. 267, but in each case the court bestowed res judicata effect on bar disciplinary proceedings.

In *Vandenplas v. City of Muskego*, 753 F.2d 555 (7th Cir. 1985), the city obtained a state court order authorizing the razing of Lawrence Vandenplas' farm buildings. After the razing, Vandenplas sued the city and alleged that the destruction of his buildings resulted from his criticism of the city and thus breached his due process, equal protection, and First Amendment rights. The federal court summarily dismissed Vandenplas' suit on

40

the basis of res judicata. Vandenplas could have raised his constitutional arguments as defenses in the state court action. Although the state court could not have awarded Vandenplas damages for the constitutional violations, if Vandenplas had prevailed on the constitutional issues, the city would have been precluded from razing the buildings and thereby Vandenplas would have averted damage.

We recognize that at least one court has held that the inability to recover damages in a first proceeding precludes application of res judicata in a second proceeding brought to garner damages. *Thaler v. Casella*, 960 F. Supp. 691 (S.D.N.Y. 1997). Nevertheless, we adopt the analysis by the Seventh Circuit Court of Appeals in *Vandenplas v. City of Muskego*. Stephen Eugster could have litigated the constitutionality of the Washington disciplinary process in *Eugster* I and sought damages in a later suit. Any ruling in *Eugster* I affirming any alleged violation of Eugster's due process rights would likely collaterally estop the WSBA from denying liability in a later suit. Any ruling in *Eugster* I voiding the WSBA disciplinary process may have prevented the damages now claimed by Stephen Eugster as a result of later disciplinary proceedings. The purposes of res judicata apply regardless of whether Eugster could seek damages in *Eugster* I. The WSBA should not be faced with litigation over issues Eugster could have litigated before.

By way of his first motion for this court to take judicial notice, Stephen Eugster observes that the WSBA hearing examiner, in *Eugster* IV, recently dismissed his

41

affirmative defenses, counterclaim and third-party complaint, by which he complains about violation of his due process rights. We note that dismissal of a counterclaim and third-party complaint do not necessarily prevent Eugster from arguing constitutional defenses against the current disciplinary proceeding. Dismissal of affirmative defenses may be more problematic. Nevertheless, dismissal may have been proper under res judicata principles. Also, Eugster remains free to challenge the hearing examiner's decision before the WSBA Disciplinary Board and the state Supreme Court.

Stephen Eugster argues that, during the *Eugster* I proceedings, he lacked an opportunity for a United States District Court to review Washington's disciplinary process due to the *Younger* abstention doctrine and the *Feldman* doctrine. We already discussed the rule from *Feldman*. The *Younger* abstention doctrine derives from *Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, federal courts do not grant relief that interferes with pending state criminal prosecutions or with pending state civil proceedings that implicate important state interests. Eugster's argument fails to recognize that he had the right to seek review of the Washington Supreme Court's decision in *Eugster* I before the United States Supreme Court. Eugster cites no case that holds that the inability to challenge a state proceeding in the United States District Court does not preclude the application of res judicata.

Because we hold that res judicata bars this suit we do not address the WSBA's

42

No. 34345-6-III
*Eugster v. WSBA*

other arguments of lack of justiciability, immunity, and failure to state a claim.

Judicial Notice

After this court conferenced in December 2016, Stephen Eugster filed two motions

respectively requesting this court take judicial notice of a June 2016 disciplinary action

filed by the WSBA against Stephen Eugster with regard to his conduct toward his client

Verdelle O'Neill and of a September 2016 vote by the WSBA Board of Governors to

admit limited practice officers and limited license legal technicians as members of the

WSBA. We deny the motions.

ER 201 governs judicial notice and declares:

> **(a) Scope of Rule.** This rule governs only judicial notice of adjudicative facts.
> **(b) Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
> **(c) When Discretionary.** A court may take judicial notice, whether requested or not.
> **(d) When Mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.
> **(e) Opportunity to Be Heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
> **(f) Time of Taking Notice.** Judicial notice may be taken at any stage of the proceeding.

Judicial notice may be taken on appeal if the following standard is met:

43

> We may take judicial notice of the record in the case presently before us or "in proceedings engrafted, ancillary, or supplementary to it." However, we cannot, while deciding one case, take judicial notice of records of other independent and separate judicial proceedings even though they are between the same parties.

*Spokane Research & Defense Fund v. City of Spokane*, 155 Wn.2d 89, 98, 117 P.3d 1117 (2005) (quoting *In re Adoption of B.T.*, 150 Wn.2d 409, 415, 78 P.3d 634 (2003)). In addressing the concept of "proceedings engrafted, ancillary, or supplementary," the Washington Supreme Court has declined to take judicial notice of the legal conclusions in a dependency action in a subsequent adoption proceeding because the dependency action constituted a separate proceeding. *In re Adoption of B.T.*, 150 Wn.2d at 415. In *Spokane Research & Defense Fund*, the high court again refused to take notice of documents from a separate proceeding. *Spokane Research & Defense Fund v. City of Spokane*, 155 Wn.2d at 98-99. We follow suit and decline to take judicial notice of a related, but separate, proceeding.

We also rule Stephen Eugster's motions for judicial notice to be untimely. Under ER 201(e), a party is entitled "upon timely request" to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. Eugster erroneously attempted to introduce the disciplinary proceeding pleadings by a statement of additional authorities in September 2016. He then waited until late December 2016, after the court conferenced, before bringing his motions.

44

CONCLUSION

On the ground of res judicata, we affirm the trial court's dismissal of Stephen

Eugster's complaint.

_____
Fearing, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, J.