**SUPERIOR COURT of the State of Delaware, Petitioner Below, Appellant,**

v.

**STATE of Delaware PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent Below, Appellee.**

No. 518,2009.

Supreme Court of Delaware.

Submitted: Dec. 9, 2009.
Decided: Jan. 19, 2010.

Jennifer D. Oliva, Esquire (argued), Ilona M. Kirshon, Esquire, State of Delaware Department of Justice, Wilmington, Delaware, for Appellant.

William W. Bowser, Esquire (argued), Kathaleen McCormick, Esquire and Alex

D. Thaler, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court *en Banc*.

BERGER, Justice.

In this appeal we consider whether the Public Employment Relations Board (PERB) has jurisdiction over the Superior Court's labor relations with its bailiffs and peace officers (collectively, bailiffs). The issue arises from a petition by the United Food and Commercial Workers (the UFCW or the Union) to represent the bailiffs. It is important to note at the outset that the issue is not whether bailiffs may organize collective bargaining units— they may. Rather, the issue is whether the executive branch of Delaware's state government may exercise authority over this aspect of the judiciary's employment practices. The Delaware Constitution vests in the Chief Justice general and supervisory powers over all courts, which includes court employees. The Chief Justice has exercised the authority to supervise judicial branch employees' labor relations by promulgating Judicial Branch Personnel Rules. Those Rules recognize the right to organize, but do not cede responsibility to the executive branch to decide labor relations issues. Accordingly, we hold that the PERB does not have jurisdiction over the Union's petition to represent bailiffs.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2008, the UFCW submitted a petition to the PERB seeking certification as the exclusive bargaining representative for all Superior Court bailiffs, excluding supervisory and confidential employees. In November, after the PERB notified the Superior Court that it had verified UFCW's petition and that it was going to post notices for an election, the Superior Court advised that it intended to challenge the PERB's jurisdiction on the ground that it violates the constitutional separation of powers doctrine. After briefing and argument, the PERB's executive director, and later the entire Board, denied the Superior Court's motion to dismiss for lack of jurisdiction in March 2009.

Shortly before the PERB's decision, the Chief Justice promulgated Administrative Directive No. 171, which included a comprehensive revision of the Judicial Branch Personnel Rules. Those Rules govern all non-judicial employees who are exempt from the State merit system, including bailiffs. The Rules recognize the right to organize, but do not specify the process by which bargaining units may be established. It is not clear whether the PERB considered the Rules, but to the extent that it did, the PERB found nothing to indicate that "the Chief Justice ... exercised a constitutional power in a manner contrary to the PERA [the Public Employment Relations Act]." [1]

Having no other procedural avenue to seek redress, the Superior Court then petitioned itself for a writ of prohibition to prevent the PERB from exceeding its lawful jurisdiction. Because the Superior Court judges were all disqualified, the Chief Justice appointed Chancellor William E. Chandler III to sit as a Superior Court judge to hear the Superior Court's petition. On August 27, 2009, the Chancellor denied the petition, and this appeal followed.

1. Appellant's Appendix, A–114.

## DISCUSSION

■ Traditionally, courts will not address constitutional issues if the matter may be resolved by application of the operative statutes. In this case, however, the Superior Court's two statutory claims are insufficient to resolve this matter short of a constitutional adjudication. First, the Superior Court argues that it is not a "public employer" within the meaning of the Public Employment Relations Act (the "Act")[2], which defines a "public employer" as "the State, any county of the State or any agency thereof...."[3] The Superior Court is not an agency, a county, or the State. It is part of the judiciary, which is a branch of state government. Therefore, the Superior Court contends, the Act should not be construed to include courts. We must reject this argument for the reasons expressed by former Chancellor Quillen in *Family Court of the State of Delaware v. Dep't. of Labor and Indus. Relations and Council 81* (hereafter, "*Council 81*")[4]:

[Although] the word "agency" does not normally include courts unless the statutory context indicates some special intent to include courts, it seems to me that the definition of public employer as "the State of Delaware or any agency thereof" was designed to be all inclusive insofar as State employees are concerned. I think that all-inclusive legislative intent is the key to this issue....[5]

■ The Superior Court next argues that even if the Act is read broadly to include it, the Act conflicts with 10 *Del C.* § 522, which expressly vests in Superior Court full authority over the employment of bailiffs. Section 522 relevantly provides:

(a) The Superior Court may appoint and remove at pleasure such number of bailiffs, criers, and pages as shall be necessary for the proper operation of the Court. They shall receive such compensation as shall from time to time be determined by the Superior Court. They shall perform such duties and have such powers in connection with attendance upon the Court as the Court may from time to time prescribe and shall receive no other fees or compensation.

We find no irreconcilable conflict between the two statutes. We so conclude because the Act's definition of "terms and conditions of employment" recognizes the potential conflict with a statute like § 522, and resolves it:

"Terms and conditions of employment" means matters concerning or related to wages, salaries, hours, grievance procedures and working conditions; *provided, however, that such term shall not include those matters determined by this chapter or any other law of the State to be within the exclusive prerogative of the public employer.*[6]

Thus, the bailiffs could organize a collective bargaining unit under the Act without limiting the employment authority and control granted to the Superior Court under § 522. Accordingly, we find, as a pure matter of statutory law, that the PERB would have jurisdiction over the Superior Court in the factual context presented here.

■ The issue thus becomes whether the PERB's exercise of its statutory au-

---

**2.** 19 *Del. C.* §§ 1301–1319.

**3.** 19 *Del. C.* § 1302(p).

**4.** C.A. No. 438, Quillen, C. (Del. Ch. May 15, 1974).

**5.** *Id.* at 2.

**6.** 19 *Del. C.* § 1302(t) (Emphasis added.).

thority violates the constitutional doctrine of separation of powers. We conclude that it does. This Court recently explained the origin and importance of separation of powers:

> The defining principle of the American constitutional form of government is separation of powers. In the United States, the foundation for both our national and state governments are three separate branches—the legislative, executive, and judicial, each coordinate and in the main independent of the others.

\* \* \*

The American tripartite system of separating governmental authority was the result of a combination of historical experience and contemporary political theory.... Because separation of powers was generally considered by American colonists to be a fundamental maxim of proper governance, its absence under the English rule of King George III eventually became intolerable and led to the American Revolution.

\* \* \*

Notably, Delaware's 1776 Constitution and all of the other first state constitutions, provided for the same three departments.... Although the specific provisions varied, the legal result reflected in each of the first state constitutions was the same: to define the sovereign power with precision and to restrain its exercise within marked boundaries.[7]

The *Council 81* opinion, which was the basis of the PERB's original decision and its argument on appeal, likewise recog-

nizes the fundamental nature of this constitutional mandate:

> Under [the doctrine of separation of powers] each branch of the government must respect the power given to the other two branches.... There is persuasive authority to the effect that the Legislature is without power to limit the constitutional power of the Judiciary as a separate branch of government to run its own house including a limitation on the power to discharge employees or a limitation by legislation providing for an administrative review within the executive branch of government of a discharge of an employee by the judicial branch....[8]

In *Council 81*, Family Court challenged the Department of Labor's jurisdiction to certify a collective bargaining representative for certain Family Court employees. The Chancellor noted that, under our constitution, the Chief Justice has "general administrative and supervisory powers over all the courts,"[9] and also has "the broadest possible administrative authority ... [encompassing] all facets of the internal management of our courts."[10] But, in 1974, when *Council 81* was decided, the Chief Justice had not exercised that power with respect to employment relations. As a result, there was no conflict at that time that prevented the Department of Labor from deciding the collective bargaining rights of Family Court's employees.

Beginning in 1981, however, the Chief Justice promulgated a series of Administrative Directives governing various aspects of judicial branch employee relations. Administrative Directive 171, adopted in 2009, establishes a comprehensive set of

---

7. *Evans v. State,* 872 A.2d 539, 543–45 (Del. 2005) (Citations omitted.).

8. *Id.* at 4–5.

9. Del. Const. art. IV, § 13.

10. *Council 81* at 10 (Internal quotations omitted.).

Judicial Branch Personnel Rules governing all non-judicial employees within the judicial branch who are exempt from the State's Merit System.[11] Those Rules govern matters ranging from the classification of positions and screening of applicants, to performance reviews and grievance procedures. The Rules also recognize the employees' right to organize, but they do not address the process for certifying bargaining units or representatives. Thus, the question becomes whether the Rules should be construed implicitly to authorize the PERB to control that aspect of employment relations for the Superior Court.

 The answer is no, for several reasons. First, the Act provides no judicial review of the PERB's certification decisions. As a result, the Superior Court would be required to abide by an administrative agency's legal determination of an "appropriate" bargaining unit, without any right to seek court review. The absence of any right to judicial review is inconsistent with the judiciary's approach to employment relations.[12] Second, to the extent that there is some form of judicial review, having courts participate as litigants would "[put] everything upside-down."[13] In this case, for example, the Superior Court made its jurisdictional argument to the

PERB, and then sought a writ of prohibition from *itself*.[14] In another example, if employees of the Supreme Court were governed by the Act, the Supreme Court would be arguing its legal position to the Court of Chancery, a court over which the Supreme Court has constitutional review power.[15] Finally, because the Rules expressly address virtually all aspects of employment relations for the judicial branch, by analogy to principles of pre-emption the Rules should be interpreted to have "occupied the field."[16]

In reaching this result, the Court is not unmindful of the need for the Rules to be amended to set forth the process and procedures by which bargaining units may be organized and certified. That amendment process is currently underway, such that the bailiffs will be able to exercise their right to secure a collective bargaining representative without significant delay. In short, the judicial branch is not seeking either to impede collective bargaining, or to detract from the legitimacy of the PERB. Rather, the judicial branch is merely exercising its constitutional power to adopt its own rules for its own employees in a manner that, it is hoped, will maximize both the courts' efficiency and the employees' satisfaction with the terms

11. *See:* 29 *Del. C.* Ch. 59.

12. *See,* Rule 18.9, Appellant's Appendix, A–349, 10 *Del. C.* § 545.

13. *Matter of Mich. Employment Relations Commission's Order,* 406 Mich. 647, 281 N.W.2d 299 (Mich.1979).

14. The Superior Court had no alternative. "The writ of prohibition is a writ issued by a superior to an inferior court to prevent such court from exercising jurisdiction over matters not legally within its cognizance, or to prevent it from exceeding its jurisdiction...." *Canaday v. Superior Court,* 116 A.2d 678, 681 (Del.1955). The writ also "may issue to an inferior administrative body where that body is performing a judicial or quasi-judicial func-

tion." *Family Court v. Dept. of Labor and Industrial Relations,* 320 A.2d 777, 779 (Del. Ch.1974).

15. Certain PERB decisions may be appealed to the Court of Chancery. *See:* 19 *Del. C.* § 1309.

16. *See, e.g.: O'Malley v. Boris,* 742 A.2d 845, 848 (Del.1999) Under the Supremacy Clause of the United States Constitution, state law is pre-empted by federal law when, among other things, "Congress [expresses its intent to pre-empt], by legislating comprehensively, to occupy an entire field of regulation...." (Citations omitted.).

of their employment. Since the Chief Justice has undertaken his constitutionally conferred authority to administer employment relations for the judicial branch, the separation of powers doctrine precludes the PERB from exercising that same authority over judicial branch employees.

## CONCLUSION

Based on the foregoing, the Superior Court's petition for a writ of prohibition is granted.