IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICHARD L. ABBOTT, | : | |
| | : | C.A. No. 2021-0409 JJC |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KATHLEEN M. VAVALA, DAVID A. | : | |
| WHITE, COLLINS J. SEITZ, JR., | : | |
| JAMES T. VAUGHN, JR., TAMIKA R. | : | |
| MONTGOMERY-REEVES, GARY F. | : | |
| TRAYNOR, AND KAREN L. | : | |
| VALIHURA, | : | |
| | : | |
| Defendants. | : | |

Submitted: December 3, 2021
Decided: February 15, 2022

**OPINION & ORDER**

Richard L. Abbott, Esquire, Abbott Law Firm, Hockessin, Delaware, *Attorney for the Plaintiff*.

Ryan T. Costa, Esquire, Department of Justice, Wilmington, Delaware, *Attorney for the Defendants*.

**Clark, Resident Judge**[1]

---

[1] Specially designated as a Vice-Chancellor pursuant to Article IV § 13(2) of the Delaware Constitution to decide this single matter.

Plaintiff Richard Abbott sues to enjoin seven individuals from performing their official duties in Delaware's attorney disciplinary process. As defendants, he names the five members of the Delaware Supreme Court and two attorneys from Delaware's Office of Disciplinary Counsel ("ODC"). In addition to requesting an injunction, he seeks a declaration that the process is unlawful and unconstitutional as applied to him. Finally, he requests that the Court place Delaware's attorney disciplinary system into receivership.

The Defendants move to dismiss Mr. Abbott's complaint pursuant to Court of Chancery Rules 12(b)(1) and (6). First, they contend that the Court of Chancery does not have jurisdiction to issue an order that prohibits all five members of the State's highest court and ODC's attorneys from prosecuting and deciding Mr. Abbott's disciplinary case. In addition, the Defendants seek to dismiss his claims based upon judicial, quasi-judicial, and prosecutorial immunity. Finally, the Defendants move to dismiss all counts in the complaint for failure to state claims.

For the reasons discussed below, the Court dismisses Mr. Abbott's suit pursuant to Rule 12(b)(1). No trial court in Delaware has jurisdiction over attorney discipline or governance matters. Based upon that premise, it follows that the Court has no jurisdiction to grant injunctive or declaratory relief against the individuals who are part and parcel of a higher Court that holds exclusive jurisdiction over the matter. As a result, the Court need not separately address the Defendants' immunity defenses or the Rule 12(b)(6) component of their motion.

## I. PROCEDURAL BACKGROUND

Mr. Abbott claims that the disciplinary action filed against him is unlawful, conspiratorial, and discriminatory. Pursuant to the parties' last report to the Court,

he awaits a Board of Professional Responsibility ("BPR") panel decision that will address his alleged misconduct.[2]

Before Mr. Abbott filed this suit, he attempted to halt or otherwise alter the course of his disciplinary proceedings in several other venues. First, after a judicial officer in the Court of Chancery registered the complaint at issue against him, he countered with a filing against that officer in the Court on the Judiciary.[3] That Court found Mr. Abbott's complaint against the judicial officer to be without merit and dismissed it.[4]

Second, Mr. Abbott filed a Delaware State Public Integrity Commission ("PIC") complaint against ODC's former Chief Counsel.[5] He alleged that she had a conflict in prosecuting his disciplinary complaint because she harbored an ambition to become a judge.[6] He claimed that this conflict of interest, in turn, created a public perception of impropriety.[7] After considering his arguments, PIC found that it lacked jurisdiction to address her alleged misconduct because it involved her law-related functions as a state-employed attorney.[8] As a result, it dismissed his action against her.[9]

---

[2] Although attorney disciplinary matters are confidential proceedings pursuant to Delaware Lawyers' R. of Disciplinary Proc. 13(g), Mr. Abbott has publicly disclosed the nature of the allegations against him and that a BPR panel hearing is pending. He has done so in his verified complaints and briefing in both this Court and the United States District Court for the District of Delaware.

[3] *Abbott v. Del. State Public Integrity Comm'n,* 206 A.3d 260, 2019 WL 937184, at *2 (Del. Feb. 25, 2019) (TABLE).

[4] *Id.*

[5] *Abbott v. Del. State Public Integrity Comm'n*, 2018 WL 1110852, at *1 (Del. Super. Ct. Feb. 28, 2018).

[6] *Id.*

[7] *Id.*

[8] *Id.* at *2.

[9] *Id.*

Mr. Abbott then requested that the Superior Court review PIC's decision by writ of certiorari.[10]   When considering his request for the writ, the Superior Court confirmed that PIC lacked subject matter jurisdiction over his petition.[11]   The Supreme Court then affirmed the Superior Court's decision.[12]   When doing so, it reiterated its long-standing recognition that ODC is "an arm of the Supreme Court" and counsel for the ODC are employees of the Supreme Court.[13]   Moreover, the Delaware Supreme Court explained that if a lower court were to attempt to command ODC or its counsel to take action regarding a disciplinary complaint, it "would infringe on the Supreme Court's exclusive authority over the discipline of Delaware lawyers."[14]

Mr. Abbott next filed suit in the United States District Court for the District of Delaware.[15]  There, the District Court analyzed claims that are nearly identical to what Mr. Abbott brings in this case. It dismissed his complaint based upon the *Younger* abstention doctrine.[16]   When Mr. Abbott moved, in the alternative, to amend his complaint, the District Court judge denied the amendment, as futile,

---

[10] *Id.*

[11] *Id.* at *4

[12] *State ex rel. Abbott v. Aaronson*, 206 A.3d 260, 2019 WL 925856, at *2 (Del. Feb. 25, 2019) (TABLE).

[13] *Id.* at *1.

[14] *Id.* at *2.

[15] *Abbott v. Mette et al.*, 2021 WL 327375 (D. Del. Jan. 31, 2021).

[16] *Id. Abbott v. Mette et al.*, 2021 WL 1168958 (D. Del. Mar. 26, 2021).  Under the *Younger* abstention doctrine, a federal court is required to abstain from exercising jurisdiction where: (1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding. *Morgan v. Scott*, 83 F.Supp.3d 616 (D. Del. 2015).  The doctrine applies to state-court proceedings until all appellate remedies have been exhausted unless it falls within an exception.  Exceptions to the *Younger* abstention doctrine include: (1) where irreparable injury is both "great and immediate" (2) where the state law is "flagrantly and patently violative of express constitutional prohibitions" or (3) where there is a showing of "bad faith, harassment, or other unusual circumstances that would call for equitable relief." *Id.* at 623, n. 6.  The District Court found that none of those exceptions applied. *Id.*

4

because Mr. Abbott could not identify facts that would permit his claims to survive judicial or quasi-judicial immunity or, separately, a Rule 12(b)(6) motion.[17]   Mr. Abbott then appealed that decision to the United States Court of Appeals for the Third Circuit.[18]

After the District Court dismissed his federal suit, with the Third Circuit appeal pending, Mr. Abbott filed the present suit in the Delaware Court of Chancery. In this action, he alleges, as he did in federal court, that two ODC attorneys and the five members of the Delaware Supreme Court unfairly target small practitioners such as him.   Based upon this alleged impropriety, he contends that the Defendants have collectively violated and continue to violate his United States Constitutional rights to due process and equal protection. He contends that these allegedly infringed-upon rights are actionable pursuant to (1) the federal RICO statute, 18 U.S.C. Ch. 96; (2) 42 U.S.C. § 1983 (hereinafter "Section 1983"); (3) and Delaware's RICO statute, 11 *Del. C.* Ch. 15.   As to his state and federal RICO claims, he alleges that the Defendants are members of a collective enterprise formed to unlawfully target him and those like him.

In his present suit, Mr. Abbott requested that the Court grant a temporary restraining order and a proposed order to expedite the proceedings.   For the reasons explained on the record after the hearing, the Court denied his request for a TRO and to expedite the proceedings.[19]   Mr. Abbott then sought interlocutory review and this Court declined to certify it.[20]   The Supreme Court refused to accept it.[21]   At present, he seeks a permanent injunction, a declaratory judgment, and to place the entire disciplinary system into receivership.

---

[17] *Abbott*, 2021 WL 1168958, at *4.
[18] *Abbott v. Mette et al.*, 2021 WL 5906146 (3rd Cir. Dec. 14, 2021).
[19] Tr. 53:17-59:9, June 3, 2021 (D.I. 21).
[20] *Abbott v. Vavala et al.*, 2021 WL 2690737, at *5 (Del. Ch. June 30, 2021).
[21] *Abbott v. Vavala et al.*, 255 A.3d 965, 2021 WL 2935349, at *1 (Del. July 12, 2021) (TABLE).

The Defendants now move to dismiss his complaint pursuant to Court of Chancery Rule 12(b)(1) and 12(b)(6). The parties briefed the matter and the Court held oral argument on November 22, 2021. The Court then invited the parties to provide authority, mandatory or persuasive, that addresses a trial court's power to control the official functions of those who sit on a higher court. The parties provided supplemental case law on the issue on December 3, 2021.

Most recently, on December 14, 2021, the United States Court of Appeals for the Third Circuit issued its decision in his federal case. There, the Third Circuit affirmed the District Court's dismissal of his claims.[22] The Third Circuit did so based upon the principles outlined in *Younger v. Harris*.[23] As part of its analysis, the Third Circuit explained that Delaware's disciplinary system was judicial in nature and that the process provides Mr. Abbott an adequate and appropriate forum to fully resolve his claims.[24]

## II. FACTUAL BACKGROUND

The following facts are those presented in Mr. Abbott's verified complaint, which are assumed to be true. They also include those of which the Court takes judicial notice for purposes of evaluating subject matter jurisdiction. As to the latter, the Court recognizes the structure, nature, and functions of Delaware's attorney disciplinary system

---

[22] *Mette*, 2021 WL 5906146, at *4.

[23] *Id.* at *2.

[24] *Id.* at *4. When recognizing the judicial nature of the process and the process's ability to address all of Mr. Abbott's claims, the Third Circuit recognized that "the Delaware Supreme Court possesses ultimate authority over each stage of the proceedings from complaint to final resolution, which either the Court or an arm of the Court carries out." *Id.* at *2. It also recognized that "from the very beginning, a disciplinary proceeding is judicial in nature." *Id.*

6

Mr. Abbott has been a member of the Bar of the Supreme Court of Delaware since December 1989.[25] The defendants include all five members of the Delaware Supreme Court. They also include the Chief and Deputy Chief Disciplinary Counsel of ODC.[26]

The Delaware Supreme Court is the highest court in the State of Delaware.[27] The Court of Chancery is a court of limited jurisdiction that hears matters in equity.[28] ODC is considered "an arm" of the Delaware Supreme Court.[29] Furthermore, the Preliminary Review Committee ("PRC"), and the Board on Professional Responsibility ("BPR") are also separate arms of the Court.[30]

The attorney disciplinary process provides multiple levels of procedural protection for an attorney-respondent who is accused of misconduct. First, ODC is the agency charged with screening, evaluating, and investigating misconduct by Delaware attorneys that may be grounds for professional discipline.[31] After the ODC evaluates a matter, it may then present charges to the PRC by submitting a proposed petition for discipline.[32] Upon presentation of the petition, the respondent-attorney has the opportunity to submit written information to the PRC in response to the allegations.[33] If the PRC, upon review of the ODC complaint and the respondent's

---

[25] Ver. Compl. ⁋ 1.

[26] *Id.* ⁋⁋ 2-8.

[27] Del. Const. art. IV, § 11.

[28] *Id.* art. IV, § 10; *Candlewood Timber Group, LLC v. Pan American Energy*, 859 A.2d 989, 997 (Del. 2004); *see also* 10 *Del. C.* § 342 (providing that "[t]he Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State").

[29] *Abbott*, 2018 WL 1110852, at *5 (citing Del. Supr. Ct. R. 64).

[30] *See* Del. Supr. Ct. R. 62 (creating the Preliminary Review Committee and the Board on Professional Responsibility to serve at the pleasure of the Supreme Court); Del. Lawyer's R. Disciplinary Proc. 1(b) (providing that "the Court shall appoint the members of the Board (which includes all members of the Unauthorized Practice of Law Subcommittee of the Board), the PRC, and the ODC, who shall function with such powers and duties as set forth by the Court").

[31] Del. Supr. Ct. R. 64(e)(1)-(2); Del. Lawyer's R. Disciplinary Proc. 9(a).

[32] Del. Supr. Ct. R. 64(e)(3); Del. Lawyer's R. Disciplinary Proc. 9(b).

[33] Del. Lawyer's R. Disciplinary Proc. 9(b)(1).

submissions, finds probable cause to believe that the respondent has committed misconduct, it then refers the matter for formal disciplinary proceedings.[34]   In that way, the PRC screens cases for *prima facie* merit as would a grand jury in the criminal process.[35]   If the PRC finds probable cause to believe the respondent-attorney has violated the Rules of Professional Conduct and approves a petition for discipline, the ODC then files the petition with the BPR.[36]

When the matter comes before a BPR panel, the respondent-attorney first has the opportunity to file an answer.[37]   The BPR chair will then schedule pre-hearing conferences as necessary to address "administrative, evidentiary, or procedural issues."[38]   BPR hearings are on the record, witnesses are under oath and subject to cross-examination, and briefing and oral arguments are also permitted.[39]   In a proceeding before the BPR, the ODC bears the burden of proving the respondent's misconduct by clear and convincing evidence.[40]   After a liability hearing, if the BPR makes a finding as to an attorney's misconduct, it will then hold a separate hearing to determine what sanctions it will recommend to the Supreme Court.[41]

The BPR's final report includes its findings, reasons, and recommendations.[42] The Supreme Court, upon review of the report, serves as the final and ultimate

---

[34] *Id.* 9(b)(3).

[35] A significant difference between grand jury practice and that of the PRC, however, is that ODC provides notice of an upcoming PRC review to the respondent-attorney so he or she may present written information to the PRC to contest the charges.

[36] Del. Lawyer's R. Disciplinary Proc.  9(b)(4)(B).

[37] *Id.* 9(d)(2).

[38] *Id.* 15(e).

[39] *Id.* 9(d)(3)-(4).

[40] *Id.* 15(d).

[41] *Id.* 9(d)(4).

[42] *Id.* 9(d)(5).

decision maker in the process. [43]   Before the process concludes, the respondent also may file objections in the Supreme Court regarding the BPR's recommendations.[44]

In Mr. Abbott's complaint, he alleges that ODC has been harassing and attacking him in bad faith for six years.[45]   The impetus of the complaint against Mr. Abbot stemmed from a Delaware judicial officer's report to ODC that Mr. Abbott engaged in unethical litigation tactics.[46]   Those allegations included his alleged advice to a client regarding how to circumvent a court judgment.[47]

As he further alleges in his complaint, Mr. Abbott contends that ODC's allegations against him are false.[48]   For an alleged impetus to fabricate these charges, he submits that the attorneys that comprise ODC and the full membership of Delaware's Supreme Court are part of a conspiracy to target sole practitioners such as he.   They target him and these individuals, he alleges, in furtherance of their operation as a "protection racket" for lawyers of big firms and government.[49]   He further alleges, in support of his state and federal racketeering claims, that the Defendants have committed and continue to commit mail fraud.   Finally, he alleges that the BPR has denied him adequate discovery and other procedural protections throughout the process.

### III.   ARGUMENTS OF THE PARTIES

The Defendants raise a facial attack to the Court of Chancery's subject matter jurisdiction pursuant to Rule 12(b)(1).   Namely, they contend that the Delaware Supreme Court has inherent and exclusive jurisdiction over all attorney disciplinary

---

[43] *Id.* 9(e).
[44] *Id.*
[45] Ver. Compl. ¶ 24.
[46] *Id.*
[47] *Id.* ¶ 26.
[48] *Id.* ¶ 28.
[49] *Id.* ¶ 34.

9

matters. Furthermore, they contend that the various "arms" of the Supreme Court, including ODC, the PRC, and the BPR, all fall within Delaware's attorney disciplinary system. That system, in turn, falls within the exclusive purview of the Supreme Court. As a result, the Defendants contend that this Court has no jurisdiction to remedy these alleged wrongs because the Defendants are acting within their official capacities as either members or agents of the Delaware Supreme Court.

Apart from seeking dismissal based upon lack of subject matter jurisdiction, the Defendants also move to dismiss the complaint based upon judicial immunity for the justice-defendants, and quasi-judicial or prosecutorial immunity for the ODC-attorney defendants. Finally, the Defendants also move to dismiss Mr. Abbott's claims for failure to state claims. In support of their Rule 12(b)(6) motion, they analyze Mr. Abbott's claims granularly and submit that none have facial merit.

Mr. Abbott counters that the Court of Chancery's equitable jurisdiction permits it to enjoin the Defendants from unlawfully and unconstitutionally prosecuting and sanctioning him. His arguments can be distilled into two: (1) alleged violations of constitutional and state rights require remedies that only a trial court, such as the Court of Chancery, can provide; and (2) the attorney disciplinary process is administrative in nature, as opposed to judicial. As to the latter argument, he contends that the Court of Chancery may provide the relief he requests because the process is administrative in character. As to both arguments, he contends that Delaware precedent and other persuasive authority supports his contention that "a lower court may enjoin lawyer disciplinary proceedings where a well-pled claim is present."[50]

---

[50] D.I. 36.

10

Furthermore, Mr. Abbott contends that the various immunities relied upon by the Defendants do not apply because he does not seek damages – he seeks only injunctive relief, declaratory relief, and the appointment of a receiver. Finally, he contends that his various state and federal law claims are sufficiently pled to survive a Rule 12(b)(6) motion.

## IV. STANDARD OF REVIEW

The Court must first address the Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction because it raises a potentially dispositive threshold issue.[51] Subject matter jurisdiction is in essence a question of the power of a court to hear and decide the case before it.[52] Therefore, when considering a motion to dismiss on this basis, "the Court's first task . . . is to assess whether the fundamental predicates to subject matter jurisdiction exist . . . ."[53] The Court must then focus on the nature of the alleged wrong to determine whether the plaintiff's claims invoke the Court's limited jurisdiction.[54]

Unlike the standards governing a motion to dismiss under Rule 12(b)(6), the Court's review of a Rule 12(b)(1) motion is more demanding on the non-movant.[55] Namely, the burden rests on the plaintiff to prove that jurisdiction exists, and "where the plaintiff's jurisdictional allegations are challenged through the introduction of

---

[51] *K&K Screw Prods., LLC v. Emerick Cap. Invs., Inc.*, 2011 WL 3505354, at *6 (Del. Ch. Aug. 9, 2011).

[52] *See* 4 Charles Alen Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2021) (recognizing that subject matter jurisdiction goes to the essence of a court's power to hear and decide a case).

[53] *Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003); *Hall v. Coupe*, 2016 WL 3094406, at *2 (Del. Ch. May 25, 2016).

[54] *Coupe*, 2016 WL 3094406, at *2.

[55] *Appriva Shareholder Litigation Co. v. EV3, LLC*, 937 A.2d 1275, 1284 (Del. 2007); *Rummel Klepper & Kahl, LLP v. Delaware River and Bay Authority*, 2022 WL 29831, at *4 (Del. Ch. Jan. 3, 2022).

material extrinsic to the pleadings, he [or she] must support those allegations with competent proof."[56] To determine if the plaintiff has met his or her burden, the Court may consider the pleadings, and matters extrinsic to the pleadings.[57]

The Court recognizes that it is one of limited jurisdiction.[58] Accordingly, the Court of Chancery may acquire subject matter jurisdiction over a case in one of three ways: (1) the invocation of an equitable right;[59] (2) a request for an equitable remedy when there is no adequate remedy at law;[60] or (3) a statutory delegation of subject matter jurisdiction.[61] Furthermore, to decide whether equitable jurisdiction exists, "the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing [the] claim."[62]

## V.    ANALYSIS

The Court has no subject matter jurisdiction to consider Mr. Abbott's claims. While in proper circumstances, the Court of Chancery may have jurisdiction to entertain Section 1983 claims that seek equitable relief, civil racketeering claims that seek equitable relief, or the appointment of a receiver, the Court has no jurisdiction to grant Mr. Abbott the relief he seeks against these Defendants or to control this

---

[56] *Lewis v. AimCo Properties, LP*, 2015 WL 557995, at *2 (Del. Ch. Feb. 10, 2015).

[57] *Appriva*, 937 A.3d at 1284; *Coupe*, 2016 WL 3094406, at *2 (citing *Pitts v. City of Wilmington*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009)); *Sloan v. Segal*, 2008 WL 81513, at *6 (Del. Ch. Jan. 3, 2008) ("This court has the discretion to consider evidence outside the pleadings in deciding motions under Rule 12(b)(1).").

[58] *Candlewood*, 859 A.2d at 997.

[59] 10 *Del. C.* § 341 ("The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity.").

[60] 10 *Del. C.* § 342 ("The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or by statute, before any other court or jurisdiction of this State.").

[61] *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, 276 A.2d 586 (Del. 1970); *Pitts v. City of Wilmington*, 2009 WL 1204492, at *5.

[62] *Candlewood*, 859 A.2d at 997.

process. Even assuming, without holding, that Mr. Abbott's various claims could survive the Defendant's immunity defenses and Rule 12(b)(6) challenges, this Court has no power or authority to compel the five members of the State's highest court to take actions or refrain from taking actions that fall within their official duties. Nor can the Court direct the efforts of ODC attorneys regarding how to perform their official duties as agents of the Delaware Supreme Court.

**A.** **The Court of Chancery has no power to declare relief against the members of the Delaware Supreme Court or to enjoin them from performing their official functions.**

First, there is a basic common law tenet that a lower court has no power to control the proceedings of a higher court.[63] The Defendants cite multiple Delaware Supreme Court decisions that apply this self-evident principle in the context of lawyer discipline and governance. In fact, some of the cited decisions address Mr. Abbott's attempts, himself, to challenge application of the disciplinary process to him.

For instance, the Delaware Supreme Court explained the nature of its exclusive jurisdiction in its 2007 decision *In re Abbott*.[64] With regard to a prior disciplinary complaint, the Court found that Mr. Abbott had violated the Delaware Lawyers' Rules of Professional Conduct and imposed a public reprimand as a result.[65] When doing so, it recognized that only the Supreme Court had the "inherent and *exclusive* authority to discipline members of the Delaware Bar."[66] Absent from Mr. Abbott's arguments is a possible justification for how a trial court in Delaware

---

[63] *Marvel v. New Castle County Superior Court*, 143 A.3d 3, 2016 WL 3563273, at *1 (Del. June 21, 2016)
[64] 925 A.2d 482 (Del. 2007).
[65] *Id.* at 489.
[66] *Id.* at 484 (emphasis added).

13

could ignore such a holding. To the contrary, one need only look to the common ordinary meaning of the word exclusive to reject Mr. Abbott's argument: namely, something that is exclusive is "*that which is not divided or shared with others*."[67] Accordingly, unanimous Supreme Court decisional authority provides that the Supreme Court's authority to regulate the Bar and discipline its members is not shared with any other body, much less a lower court. This Court has no jurisdiction over the matter.

Furthermore, Mr. Abbott's attempts, in other venues, to challenge his current disciplinary charges have produced similar results. Namely, earlier in the current process, the Supreme Court held that the Superior Court could not interfere with ODC or its counsels' actions by way of extraordinary writ.[68] When so holding, the Supreme Court explained that to permit the Superior Court to do so "would infringe on [the Supreme Court's] exclusive authority over the discipline of Delaware lawyers."[69] There, the Supreme Court did not address the authority of the Court of Chancery to issue an injunction against individual justices or ODC attorneys. Nevertheless, the holding applies as equally to this Court as it did to the Superior Court. The differences between an extraordinary writ and an injunction, while significant, are not material for the purposes of recognizing the lack of jurisdiction over this issue.

In addition to relying upon court decisions in matters previously filed by Mr. Abbott, the Defendants cite a long list of Delaware decisions that confirm the Delaware Supreme Court's exclusive jurisdiction over lawyer discipline and governance.[70] Those decisions all compel the same result -- a lower court is unable

---

[67] Am. Heritage Dictionary 473 (2d ed. 1985) (emphasis added).
[68] *Aaronson*, 2019 WL 925856, at *2.
[69] *Id.*
[70] D.I. 35. *Hunt v. Court of Chancery*, 254 A.3d 396, 2021 WL 2418984, at *1 (Del. June 10, 2021) (TABLE); *Aaronson*, 2019 WL 925856, at *2; *Crumplar v. Superior Court ex rel. New*

14

to control the official functions of a higher court, be it by an extraordinary writ in a court of law, or an injunction in the Court of Chancery.

The Delaware Supreme Court's inherent and exclusive jurisdiction over members of its Bar is neither new nor unique to Delaware. Our Supreme Court has described its exclusive authority over all such matters as follows:

> [t]his tenet is of historic proportions, having been transplanted to Delaware by the colonists. It is based on the concept, taken from England, that the courts possess the exclusive right to govern the practice of law.[71]

Other states unanimously (or almost unanimously) recognize the inherent authority of the *courts* to regulate the practice of law.[72] Furthermore, the vesting of such authority in only one court in a state -- its supreme court -- is the majority rule.[73] In Delaware, the absence of Chancery's jurisdiction over Mr. Abbott's claims is fixed by three historical/structural underpinnings. They include (1) Delaware law's derivation from English law, (2) separation of powers concepts, and (3) Delaware decisional authority that recognizes that only the Supreme Court may exercise this authority on behalf of the "courts."

First, what the Delaware Supreme Court describes as a "tenet of historic proportions" comes from English law where the king first had the power to appoint attorneys in his role as the "the fountain of justice."[74] In fact, for counsel to appear

---

*Castle Cty.*, 56 A.3d 1000, 1010 (Del. 2012); *In re Appeal of Infotechnology, Inc.*, 582 A.2d 215, 220 (Del. 1990).

[71] *In re Green*, 464 A.2d 881, 885 (Del. 1983).

[72] Randy J. Holland, *The Delaware State Constitution: A Reference Guide* art. IV, at 181 (2002) (emphasis added). *See Rhode Island Bar Ass'n v. Automobile Service Ass'n*, 179 A. 139, 142 (R.I. 1935) (recognizing the concept of control by the court which the English colonists brought with them to America); *In re Morse*, 126 A. 550, 552 (Vt. 1924) (providing "Justices of the Supreme Court shall make, adopt, and publish, and may alter or amend rules regulating the admission of attorneys to the practice of law . . . .").

[73] Felix F. Stumpf, *Inherent Powers of the Court* § 6.32, at 45 (2008) ("In most states, the inherent power to discipline lawyers is confined to the supreme courts.").

[74] *In re Day et al.*, 181 Ill. 73, 84 (Ill. 1899); *see* Leon Green, *The Courts' Power over Admission and Disbarment*, 4 Tex. L. Rev. 1, 3 (1925) (noting that the early history of the legal profession

before any court, the king had to provide a special grant of authority.[75]   At some point, the English kings shifted the privilege to regulate attorneys to the judges; at that point, the legal profession came under judicial supervision.[76]   The decision to do so followed the recognized need to better regulate the quality of attorneys appearing before the courts.[77]   Specifically, King Edward I first authorized his justices to appoint a specific number of skilled attorneys.  He also provided them the discretion to add to the roles as they saw fit.[78]   Later, King Henry IV confined the authority to furnish or withhold the privilege to practice law  to the courts with the following decree:  "all attorneys should be examined by the justices, and by their discretion, their names shall be put upon the roll."[79]   Accordingly, our law is derived from a nation that recognized that only the courts could regulate the practice of law.

Second, separation of powers and divided government concepts are inextricably intertwined with a court's inherent authority over this issue.[80]   As provided in the federal system, the Delaware Constitution provides for three separate but equal branches of government in our state system.[81]   Delaware's judiciary is the branch charged with deciding cases or controversies.  Those cases and controversies

---

furnishes a vital chapter in the history of our common law, and that the power to appoint attorneys was exercised as an "early royal prerogative").

[75] *In re Day*, 181 Ill. at 84.

[76] Leon Green, *The Courts' Power over Admission and Disbarment*, at 3.

[77] *Rhode Island Bar*, 179 A. at 143.

[78] *In re Day*, 181 Ill. at 84-85; *In re Morse*, 126 A. at 552.  *See* Randy J. Holland, *The Delaware State Constitution: A Reference Guide* art. IV, at 181 (2002) (recognizing a statute enacted by Edward I's direction that the King's Justices provide enough attorneys to serve the Crown and the people); Frederick Pollock & Frederic Maitland, *History of English Law before the Time of Edward I* 194, 195 (1895) (explaining King Edward I's regulation of attorneys through his justices' discretion).

[79] *In re Morse*, 126 A. at 552; *Rhode Island Bar*, 179 A. at 144.

[80] Felix F. Stumpf, *Inherent Powers of the Court* § 2.4, at 6 (2008); *see also* Note: *The Inherent Power of the Judiciary to Regulate the Practice of Law*, 60 Minn. L. Rev. 783, 785 (1976) (explaining the common recognition that inherent judicial power is inextricably bound with the separation of powers doctrine).

[81] Del Const. art. II, III, & IV.

are frequently brought forward by attorneys who represent the parties. Given the independence of the judiciary and the judiciary's inherent power to control proceedings before it, the judiciary's oversight of the attorneys that present these cases has become a well-recognized aspect of the separation of powers doctrine.[82]

Third, the vesting of exclusive authority within the highest court in the State, is the final, and most critical aspect of what divests the Court of Chancery of jurisdiction. Again, the highest court in most states have reserved jurisdiction to regulate attorney conduct exclusively for themselves.[83] Pursuant to the decisions cited above, the Delaware Supreme Court fits firmly within this majority. Through what are now generations of decisions, the Delaware Supreme Court has coalesced all judicial authority over this matter within its own jurisdiction.

In the face of this authority and historical support, Mr. Abbott cites the Court of Chancery's decision in *In re Severns*.[84] He argues that the Chancellor's reference in that decision to enjoining "discipline" is an explicit recognition of the Court of Chancery's authority to provide him relief. In that decision, the court examined a

---

[82] *See Evans v. State*, 872 A.2d 539, 546 (Del. 2005) (explaining the important role the separation of powers doctrine has played in Delaware's constitutional history, and noting that the judiciary, the executive, and the legislature are "distinct and independent bodies"); *see also Superior Court v. State, Pub. Empl. Relations Bd.*, 988 A.2d 429, 435 (Del. 2010) (concluding that because the Supreme Court has authority to administer employment relations for the judicial branch, the separation of powers doctrine precluded the labor relations board from exercising authority over judicial branch employees).

[83] Felix F. Stumpf, *Inherent Powers of the Court* 45 § 6.32 n.267 (2008); *see e.g., State ex rel. Buck v. Maloney*, 809 N.E.2d 20 (Ohio 2004) (explaining that the Ohio constitution grants "general supervisory power over the courts of Ohio," and "[the Supreme Court] has guarded that power from encroachment by the lower courts"); *Anderson v. Alaska Bar Ass'n*, 91 P.3d 271 (Alaska 2004) (affirming that the superior court lacked jurisdiction to hear appeals regarding lawyer disciplinary matters); *In re Melograne*, 812 A.2d 1164 (Pa. 2002) (explaining that the "inherent and exclusive power" to admit to practice or to discipline an attorney is confined to the Supreme Court). *But see e.g.*, *Burton v. Mottolese*, 835 A.2d 998 (Conn. 2003) (affirming a trial court's decision to disbar an attorney); *In re License of Delk*, 444 S.E.2d 198 (N.C. 1994) (concluding that the superior court has the inherent power to discipline members of the bar, including disbarment).

[84] 425 A.2d 156 (Del. Ch. 1980).

prospective guardian's petition to discontinue life support measures to keep a permanently comatose person alive.[85] There, the court entered an injunction against bad faith prosecution of the guardian and those who followed his lawful directions.[86] When doing so, the Chancellor included, within his order, a prohibition against "disciplinary action filed in defiance of [his] order."[87] There is no indication in the *In re Severns* decision, however, that the Chancellor's reference to enjoining disciplinary action referred to *attorney* disciplinary action.[88] Rather, the decision is more reasonably read to refer to disciplinary action against medical providers who would follow the guardian's direction to remove life support.[89] Regardless, had the Chancellor contemplated attorney disciplinary actions in his order, it would have been inconsistent with clear Supreme Court direction regarding the issue. In either event, the decision does not support Mr. Abbott's position.

Given the absence of Delaware authority supporting his position, Mr. Abbott cites persuasive authority from four jurisdictions. They include appellate decisions from Washington, Georgia, Texas, and North Carolina that recognize that trial courts in those states have jurisdiction to halt attorney discipline or to control attorney governance matters.

First, Mr. Abbott cites a Washington intermediate appellate court decision in *Eugster v. Washington State Bar Association, et al.*[90] In that case, a Washington attorney, like Mr. Abbott, sought to enjoin that state's bar association and its disciplinary counsel from prosecuting a disciplinary complaint against him.[91] The

---

[85] *Id.* at 157.
[86] *Id.* at 158.
[87] *Id.* at 161.
[88] *Id.*
[89] *Id.*
[90] 397 P.3d 131 (Wash. App. 2017).
[91] *Id.* at 134.

plaintiff-attorney alleged, as does Mr. Abbott, that their system lacked due process.[92] The Washington attorney also sought an injunction, as does Mr. Abbott, pursuant to 42 *U.S.C.* § 1983 to stop disciplinary proceedings against him.[93]

At the outset, the Washington trial court dismissed the Washington attorney's suit for lack of subject matter jurisdiction.[94] On appeal, however, the intermediate appellate court reversed the trial court's decision, and held that the trial court had jurisdiction.[95] In its decision, the appellate court stressed that "state courts of general jurisdiction [must] remain open for civil rights suits."[96] Notwithstanding that holding, it nevertheless dismissed the attorney's suit on *res judicata* grounds.[97] At that point, the Washington Supreme Court denied *certiorari* in the case.[98] As a result, that state's highest court did not examine the issue.

Second, Mr. Abbott relies on the Georgia Supreme Court's decision in *Clary v. Matthews*.[99] In a two-page decision, the Georgia high court did not expound on the structure of Georgia's disciplinary process. It did, however, consider whether a trial court erred when it refused to consider the merits of a claim to enjoin "a grievance tribunal appointed by the State Disciplinary Board of the State Bar of Georgia."[100] In that decision, the Georgia Supreme Court reversed the trial court's order of dismissal because the trial court had "[denied] the injunction without the

---

[92] *Id.*

[93] *Id.* at 138; 42 U.S.C. § 1983 ("Every person who . . . subjects any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."). Of note, Section 1983 limits the availability of injunctive relief against judicial officers, who act their official capacities, to where a declaratory decree is violated, or declaratory relief is unavailable.

[94] *Eugster*, 397 P.3d at 138.

[95] *Id.* at 141.

[96] *Id.* at 144.

[97] *Id.* at 149.

[98] *Eugster v. Washington State Bar Ass'n, et al.*, 404 P.3d 493 (Wash. 2017) (denying petition for review).

[99] 160 S.E.2d 338 (Ga. 1968).

[100] *Id.*

19

introduction of evidence."[101]  The Georgia high court then remanded the case and directed the trial court to consider evidence and to determine whether an injunction would be appropriate.[102]

Third, Mr. Abbott cites the Texas Supreme Court's decisions in *State Bar of Texas v. Gomez*[103] and *O'Quinn v. State Bar of Texas*.[104]  At the outset, the *Gomez* decision does not support his contention.  There, the appellate court examined whether a trial court could grant injunctive or declaratory relief that required the Texas Bar and the Texas Supreme Court to adopt a mandatory pro bono program for Texas lawyers.  Rather than support Mr. Abbott's position, the Texas high court recognized the following:

> to the extent the remedies are sought against the Supreme Court, they would clearly impinge on the Court's exclusive authority to regulate the practice of law . . . No subordinate court in Texas has the power to usurp our authority or responsibility in this area . . .  An injunction mandating this court or the State Bar to implement a mandatory pro bono program would be improper.  It would inappropriately involve the [trial] court in the regulation of the practice of law.[105]

Mr. Abbott's reliance on the 1988 Texas Supreme Court's *O'Quinn* decision, however, would better support his claim had it not been effectively abrogated by the later *Gomez* decision and another decision.  While the court in *O'Quinn* did not expressly hold that the trial court had subject matter jurisdiction to consider an injunction affecting the Texas disciplinary process, it examined the merits of the trial court's decision on appeal.[106]  It then remanded the matter for further proceedings, which tacitly confirmed that the trial court had jurisdiction to potentially enjoin the

---

[101] *Id.* at 339.
[102] *Id.*
[103] 891 S.W.2d 243 (Tex. 1994).
[104] 763 S.W.2d 397 (Tex. 1988).
[105] *Gomez*, 891 S.W.2d at 246.
[106] *O'Quinn*, 763 S.W.2d at 399.

20

attorney's disciplinary proceedings.[107]  In that way, the *O'Quinn* decision, in a vacuum, would support Mr. Abbot's jurisdictional argument.

After the *O'Quinn* decision, however, the Texas Supreme Court decided another case similarly to how it decided *Gomez*.  In *Board of Disciplinary Appeals v. McFall,*[108] the Texas Supreme Court effectively abrogated the holding in *O'Quinn*.  There, the Court held, in the strongest of language, that a trial court had no jurisdiction to interfere with the attorney disciplinary process through injunctive relief or otherwise.[109]  It then issued both writs of mandamus and prohibition against the trial court to force it to cease any such attempt.[110]

Fourth and finally, Mr. Abbott cites the North Carolina Supreme Court decision in *Gilbert v. North Carolina State Bar*.[111]  That decision recognizes the right of an attorney-respondent to sue in a trial court of general jurisdiction to enjoin the process.[112]  The court found subject matter jurisdiction to exist in North Carolina's court of general jurisdiction because one should not have a right (to a fair disciplinary process) without a remedy (the ability to have a trial court develop and then examine a full record before deciding if a remedy is appropriate).[113]  This decision, relied upon by Mr. Abbott, cannot be reconciled with Delaware precedent.

In summary, Mr. Abbott identifies decisions in three states that recognize that a trial court in those jurisdictions has subject matter jurisdiction over lawyer disciplinary matters.  Nevertheless, a majority of states, that include Delaware, prohibit trial courts from interfering with the process.[114]

---

[107] *Id.* at 404.
[108] 888 S.W.2d 471 (Tex. 1994).
[109] *Id.* at 472.
[110] *Id.* at 473.
[111] 678 S.E.2d 602 (N.C. 2009).
[112] *Id.* at 603.
[113] *Id.*
[114] Felix F. Stumpf, *Inherent Powers of the Court* 45 § 6.32 (2008) (recognizing this to include the majority rule); *see e.g.*, *Melling v. Stralka*, 465 N.E.2d 857 (Ohio 1984) (explaining the Ohio

Finally, implicit in Mr. Abbott's arguments regarding subject matter jurisdiction is the position that, in the Delaware's bifurcated system, only a court of equity can remedy allegedly unconstitutional actions taken by the Defendants. In the absence of Delaware authority, he focuses on his Section 1983 claim. He contends the claim provides him a mechanism to vindicate alleged constitutional wrongs. In his parallel federal filing, however, the Third Circuit rejected his claims that Delaware's system is inadequate to provide him full protection. Namely, it held that Delaware's disciplinary process provides "an adequate opportunity . . . for [Mr.] Abbott to raise his federal claims."[115] If Delaware's disciplinary process provides him the ability to litigate his numerous federal claims, it follows that the process provides him an adequate opportunity to litigate any state claims as well.

Finally, while Mr. Abbott argues that only a trial in the Court of Chancery can protect his rights, he fails to acknowledge the numerous protections that the disciplinary process provided and still provides him. Namely, under Delaware's system, the PRC acted as would a grand jury, which screened his case and found probable cause to believe he committed misconduct.[116] Currently, he is availing himself of the procedural protections provided by the BPR. They include (or

---

Supreme Court's express constitutional authority arising from the inherent power of the court to control the attorneys practicing before it); *Chessin v. Office of Attorney Regulation Counsel*, 458 P.3d 888 (Colo. 2020) (affirming the well-settled principle that the Colorado Supreme Court, as part of inherent and plenary power, has the exclusive jurisdiction over attorneys and the practice of law).

[115] *Mette*, 2021 WL 5906146, at *2-3. Although the Third Circuit made its findings regarding the sufficiency of Delaware's disciplinary process when considering the *Younger* abstention doctrine, its decision, upon finality, also triggers issue preclusion. Although the Defendants did not raise the argument, the standard for applying issue preclusion is: (1) a question of fact essential to the judgment, (2) be litigated and (3) determined by (4) a valid and final judgment. *Garvin v. Booth*, 2019 WL 3017419, at *3 (Del. Super. July 10, 2019). All criteria are apparently met in this instance, including the requirement that there be a valid and final judgment notwithstanding that the period for petitioning the United States Supreme Court for certiorari has not yet expired. 18A Charles Alen Wright & Arthur R. Miller, Federal Practice and Procedure § 4433 (3d ed. 2021).

[116] Del. Lawyer's R. Disciplinary Proc. 9(a)(3).

included depending upon at what point the parties find themselves in the BPR process) his right to request subpoenas, cross-examine adverse witness, and advance oral and written arguments.[117]   Finally, he will have the right to raise any exceptions to a BPR panel recommendation with the body that holds exclusive jurisdiction over the matter, the Supreme Court.   As a result, Mr. Abbott may raise his federal and state contentions that the process is unfair or unconstitutional within the process.[118] Ultimately, the Court with exclusive jurisdiction over the matter will decide the merits of his claims.

For all of these reasons, Mr. Abbott fails to demonstrate that the Court has subject matter jurisdiction over his claims.   As the Supreme Court has reiterated as recently as June 2021, "absent [contempt of court situations, the Supreme Court] has exclusive jurisdiction to address violations of Delaware lawyer disciplinary rules."[119]

## B. The Court also has no jurisdiction to entertain Mr. Abbott's claims for declaratory relief or an injunction that targets ODC's attorneys.

Mr. Abbott's claims against the ODC-attorney defendants requires an additional layer of analysis because they are not constitutional judicial officers that sit on the court that holds exclusive jurisdiction over the matter.   In largest part, Mr. Abbott argues that ODC counsels' duties are merely administrative in nature. Accordingly, he contends that the Court of Chancery has subject matter jurisdiction to enjoin them from harassing him and from illegally prosecuting him.   To that

---

[117] *Id.* 12(f). The parties reported in public filings and publicly accessible arguments that the BPR hearing was scheduled for November 2021.  They have not updated the Court, nor do they need to, of the status of that hearing or its potential outcome.
[118] *In re Abbott*, 2021 WL 1996927, at *2 (Del. May 19, 2021) ("Any objections to the conduct of the ODC attorneys or the BPR Panel, or their continued participation in the disciplinary proceedings will be considered by the Court upon review of the Panel's recommendation.").
[119] *Hunt*, 2021 WL 2418984, at *1.

effect, Mr. Abbott fixates upon the Delaware Supreme Court's description of ODC as "an agency of the Court.[120]" That characteristic, he submits, justifies viewing ODC's role separately from that of the Supreme Court's. His theory is that the Court of Chancery may enjoin the ODC agency as it could enjoin an executive agency.

In so arguing, Mr. Abbott fails to acknowledge the Supreme Court's prior decision in one of his serial challenges to Delaware's disciplinary process. Namely, he ignores the Supreme Court's decision that rejected his earlier attempt to compel ODC to file a disciplinary complaint against an ODC attorney.[121] There, Mr. Abbott had sought a writ of mandamus to compel this action.[122] When considering whether the Superior Court could issue a writ of mandamus to compel ODC to take such action, the Supreme Court recognized:

> the ODC exists only by virtue of its establishment by this Court, and its chief disciplinary counsel . . . is appointed by and subject to removal by this Court. The Superior Court, of course, does not have the power to command this court or its employees to carry out their official duties. This result is also consistent with this Court's 'inherent and exclusive authority to discipline members of the Delaware Bar.' . . . If the Superior Court were to issue a mandamus to command the ODC or its chief disciplinary counsel to take action on some disciplinary complaint, that would infringe on this Court's exclusive authority over the discipline of Delaware lawyers.[123]

Based upon this reasoning, Mr. Abbott's present attempt to interfere with the ODC-attorney defendants' duties by way of injunction in this Court similarly lacks merit.

Furthermore, in the Third Circuit's recent decision where it affirmed the dismissal of Mr. Abbott's federal action, that court recognized that Delaware'

---

[120] *See Crumplar*, 56 A.3d at 1010 (referring to the ODC as an agency of this court, which is consistent with the principle that the Supreme Court alone has the inherent and exclusive responsibility for disciplinary matters).
[121] *Aaronson*, 2019 WL 925856, at *1.
[122] *Id.*
[123] *Id.* at *2.

attorney disciplinary process, *including its ODC component*, is entirely judicial in nature.[124]  There, when examining whether the *Younger* abstention doctrine applied, the Third Circuit considered the following:  (1) whether there were ongoing *judicial* proceedings, (2) whether those proceedings implicate important state interests, and (3) whether there is an adequate opportunity in the state proceeding to raise federal challenges.[125]

In analyzing these criteria, the Third Circuit found Delaware's disciplinary process to be entirely judicial in nature.[126]  That "judicial" characterization included the functions performed in all parts of the process, from beginning to end, including those functions performed by ODC's attorneys.[127]  As that court held, "the Delaware Supreme Court possesses ultimate authority over each stage of the proceedings from complaint to final resolution, which either the Court *or an arm of the Court* carries out."[128]

### C. The Delaware Supreme Court's May 2021 Order independently divests this Court and other lower courts of jurisdiction over Mr. Abbott's claims.

The Delaware Supreme Court's May 2021 Order places a further overlay on the subject matter jurisdiction analysis in Mr. Abbott's case.   Namely, each of Mr. Abbott's claims and the remedies he seeks run headlong into a Supreme Court's recent Order that provides:

> ODC attorneys shall continue to prosecute the pending disciplinary action against Abbott, and the current BPR Panel assigned to consider the charges against Abbott shall continue to hear the action and make a recommendation

---

[124] *Mette*, 2021 WL 5906146, at *3.
[125] *Id.* at *2.
[126] *Mette*, 2021 WL 5906146, at *3.
[127] *Id.* at *1.
[128] *Id.* at *2 (emphasis added).

to the Court. Any objections to the conduct of the ODC attorneys or the BPR Panel, or their continued participation in the disciplinary proceedings will be considered by the [Delaware Supreme Court] upon review of the Panel's recommendations . . . . This is a Court order.[129]

This Order enjoins Mr. Abbott from filing any new legal action to attempt to circumvent the process. It has the further effect of divesting this Court of any jurisdiction, to the extent that any does exist, from interfering in Mr. Abbott's ongoing disciplinary proceedings. Subject matter jurisdiction goes to the power of a court to hear a particular matter. Where the State's highest court issues an order that mandates that no court below may interfere with a process that (1) is underway, and (2) falls within the high court's jurisdiction, the order divests lower courts of jurisdiction over the matter. For this additional reason, Mr. Abbott's claims must be dismissed for lack of subject matter jurisdiction.

## VI.   CONCLUSION

For the reasons discussed above, Mr. Abbott's claims are **DISMISSED** with prejudice because this Court has no subject matter jurisdiction to grant him the relief[130] he requests. Because the Court has no jurisdiction, it need not separately analyze whether Mr. Abbott's claims should also be dismissed because of judicial, quasi-judicial, or prosecutorial immunity. Likewise, the Court declines to address the merits of Defendants' Rule 12(b)(6) challenges.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Resident Judge

---

[129] *In re Abbott*, 2021 WL 1996927, at *2.

26